658 P.2d 825

**STATE of Arizona, Appellee,**

v.

**Edgar FRISTOE, Appellant.**

**No. 1 CA–CR 5517.**

Court of Appeals of Arizona,
Division 1,
Department D.

Nov. 26, 1982.

Rehearing Denied Jan. 6, 1983.

Review Denied Feb. 8, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Law Offices of David A. Chamberlain, P.C. by David A. Chamberlain, Prescott, for appellant.

OPINION

EUBANK, Judge.

Appellant Edgar Fristoe was indicted on three counts of attempting to engage in oral sexual contact with minors under the age of fifteen years, class three felonies, and one count of attempting to engage in oral sexual contact with a minor fifteen years of age or older, a class one misdemeanor. A.R.S. §§ 13–1001, 13–1405. Appellant did not appear at time of trial and was tried before a jury in absentia. The jury found appellant guilty on all four charges. After appellant was apprehended in Kansas and returned to Arizona on the bench warrant issued for his failure to appear for trial, the trial court sentenced him to concurrent terms of 10 years on the three felony convictions and to time served on the misdemeanor conviction. The appellant appeals from the judgment and sentences.

The record shows that on the afternoon of October 1, 1980, fifteen-year-old J.F.[1] was delivering papers within the Miller Valley area of Prescott, Arizona. Sometime between 4:00 and 4:30 p.m., J.F. noticed a man in a green Dodge pickup truck which was pulling a red trailer filled with brush. As she rode her bicycle past the truck, the man driving the truck gave her a funny look that made her feel uncomfortable. She continued delivering papers and a few minutes later she saw the truck again. This time she saw tools in the truck but no brush in the trailer. The man called out to her, asking whether she would like to earn $5.00. When she said that she would, depending on what she had to do, the man said that he wanted to kiss between her legs. J.F. said "no" and the man left.

That same day at approximately 4:00 to 4:15 p.m., two eleven-year-old girls, P.S. and M.S. were walking in an area a few blocks away. A man in a truck with a trailer pulled up beside them. M.S. testified that the man spoke to both girls and offered them $5.00 to kiss between their legs. The girls said "no" and kept walking.

Although the man drove away, he soon returned and raised the offer to $20.00. The girls again refused and ran to M.S.'s home and told M.S.'s mother. M.S.'s mother immediately contacted the police. Both M.S. and P.S. described the truck as being bluish gray and stated that it was pulling a red trailer. M.S. said the truck was old and looked like it was used to do yard work. At trial P.S. could not remember what the man asked them to do, but she remembered he had offered them $5.00 and then raised the offer to $20.00. M.S.'s mother testified that, at the time the girls came running into the house, both expressed that the man had offered them money to kiss between their legs. P.S.'s mother also testified that P.S. had been able to tell her what the man had said at the time the incident had occurred.

A little over a mile from where the above incidents occurred, eleven-year-old J.N. was walking to her music lesson. Sometime between 4:00 and 4:45 p.m. on that same day, J.N. was approached by a man driving a green truck which was pulling a red trailer. She described the truck as looking scraped up. J.N. did not hear what the man was saying to her at first and asked him to repeat it. She then heard him ask if she would like to earn $5.00 by letting him put his head between her legs and take a picture. J.N. said "no" and ran away. The truck turned and drove in the opposite direction.

When J.F. reached home and told her parents what had occurred, her father drove her around the area to try to locate the man again. Although they did not find him at that time, later in the evening when J.F. and her father were in downtown Prescott, J.F. again spotted the truck and trailer. She recognized the passenger in the truck as the man who had spoken to her earlier that afternoon. J.F.'s father took down the license number of the truck and later gave it to the police. The police subsequently learned that the vehicle using

---

**1.** Since the four victims are under the age of eighteen, they will be identified in this opinion by initials only.

that license number was a green 1964 Dodge truck registered to the appellant Edgar Fristoe. A few days later police officers stopped the truck as it was being driven by appellant and when they saw that he matched the physical description they had been given by the four girls the police began to focus on appellant as a suspect in the case.

J.N. also spotted the appellant with his truck and trailer on several subsequent occasions. She saw him driving the truck two days after the confrontation. Less than a month later she again saw the truck and trailer while she was with her father. The truck J.N. pointed out to her father was an old green Dodge pickup with a red trailer. Information concerning a landscaping service was on the side of the truck.

The police developed a five-photo lineup and included as one of the photos a blown up shot of the appellant taken from his driver's license. The photo lineup was shown to each of the girls. A few days later the police also conducted a body lineup using eight men including the appellant. When J.N. was shown the photos she pointed to number 2 and number 5 as looking like the man but indicated that she did not think any of them were him. Appellant's picture was number 5. At the body lineup, J.N. picked the appellant and indicated she was positive he was the man. J.F. also picked appellant's photo as resembling the man. At the body lineup she indicated that none of the men was the man who had spoken to her, but two or three minutes after she left the station, she told her parents she thought that number 6 was the man. Appellant was number 6 in the body lineup. J.F. indicated that she had had some hesitancy to make the identification of number 6 because the man who spoke to her was wearing glasses and the man in the number 5 photo was not wearing glasses. Also, she had been very frightened at the body lineup. P.S. picked a different person in the photo lineup and was not able to choose anyone at the body lineup. M.S. identified appellant's photo but chose another man at the body lineup.

Appellant's brother testified that the appellant had been with him doing yardwork at the residence of Nellie Holt during the time period that the four girls were propositioned. The brother testified that the appellant was working with him there from 3:00 p.m. until the job was finished at about 4:00 or 4:15 p.m. At that time they talked to Mrs. Holt and received payment. They left Mrs. Holt's house at 4:30, picked up appellant's wife and went to give an estimate for yardwork for Viola Rubink. Appellant's wife testified positively that appellant and his brother had picked her up at 4:30, that they all had gone to do the estimate at Mrs. Rubink's, and that she and the appellant went directly home for the evening thereafter. Mrs. Rubink confirmed that the Fristoe brothers had given her an estimate sometime around October 1, 1980, but she was not sure about the exact date.

The state offered testimony to rebut the testimony of appellant's wife and brother. Nellie Holt testified that she did not arrive at her home on October 1, 1980 until after 5:00 p.m. The Fristoe brothers were at her house at that time and collected payment from her for their work. Evidence was also given showing that Mrs. Holt's residence was just a few blocks from the place where the incident with J.N. occurred.

### CORRECTNESS OF CHARGES BROUGHT AGAINST APPELLANT

For his first argument on appeal appellant contends that the evidence produced at trial showed that if he was guilty of anything, he was guilty merely of solicitation and not of attempt. Appellant moved for judgment of acquittal on the grounds that only the crime of solicitation and not attempt had been shown. When appellant's motion was denied, he then requested the court to instruct the jury that solicitation is a lesser included offense for which the jury could choose to find appellant guilty. This request was also denied. Therefore, appellant also argues on appeal that the trial court's failure to give the solicitation instruction was reversible error.

The appellant was charged with attempted oral sexual contact with a minor fifteen years of age or over and with three minors under the age of fifteen,[2] in this instance the victims were a fifteen-year-old girl and three eleven-year-old girls. The relevant portion of the attempt statute, A.R.S. § 13–1001, with which appellant was charged provides:

A. A person commits attempt if, acting with the kind of culpability otherwise required for commission of an offense, such person:

\* \* \* \* \* \*

2. Intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense;
. . . .

The solicitation statute, A.R.S. § 13–1002(A), under which appellant claims he should have been charged with instead provides:

A person, other than a peace officer acting in his official capacity within the scope of his authority and in the line of duty, commits solicitation if, with the intent to promote or facilitate the commission of a felony or misdemeanor, such person commands, encourages, requests or solicits another person to engage in specific conduct which would constitute the felony or misdemeanor or which would establish the other's complicity in its commission. If the offense is completed, such person shall be accountable as prescribed by § 13–303.

Solicitation carries a lighter sentence than attempt provided the offense solicited is not completed.

The appellant's argument that the charge against him should be solicitation rather than attempt centers upon the fact that

appellant did nothing other than speak words to the girls. Although some of the girls expressed that they were afraid appellant might get out of the truck and come towards them, there is no evidence that appellant made any physical movement towards any of the girls to commit the acts suggested to them, except driving up to them in his truck. Appellant contends that some overt act is required for an attempt to commit a crime to have taken place and that his mere speaking of words with no other physical movement cannot be considered an act.

The attempt statute in Arizona's Revised Criminal Code which became effective in 1978 provides that the taking of "any *step* in a course of conduct planned to culminate in commission of an offense" when combined with the necessary intent amounts to an attempt. The former attempt statute (A.R.S. § 13–108) defined an attempt to commit a crime as "the performance of an *act* immediately and directly tending to the commission of the crime with the intent to commit such crime, the consummation of which fails on account of some intervening cause." This former statute involved two elements: "(1) an intent to commit the crime, and (2) some step or overt act towards the commission of the crime." *State v. Harvill*, 106 Ariz. 386, 388, 476 P.2d 841, 843 (1970). The Arizona Code Commission recommended to the legislature that their § 600(a)(2) attempt, (A.R.S. § 13–1001), involve a "substantial step" as an element of attempt instead of "an act." The legislature, however, disregarded the recommendation and adopted "any step." R.J. Gerber, *Criminal Law of Arizona*, (1978), § 13–1001, in his Comment, at pp. 133–34, discusses the reason why Kentucky, Hawaii and the code commission adopted "substantial step" as opposed to "any step," and concludes:

B. Sexual conduct with a minor under fifteen years of age is a class 2 felony. Sexual conduct with a minor fifteen years of age or over is a class 6 felony.

---

**2.** § 13–1405. Sexual conduct with a minor; classifications

A. A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age and who is not his or her spouse.

The repudiation of the requirement of "substantial in subsection (a)(2) indicates a legislative intent to criminalize remote, preparatory acts, at the risk of penalizing possible equivocal behavior."

While such a conclusion is not unreasonable, we disagree. We believe that such a conclusion conflicts with the stated legislative purposes for adopting the new criminal code as set out at A.R.S. § 13–101.[3] Further, A.R.S. § 13–201 states:

The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform a duty imposed by law which the person is physically capable of performing.

"Conduct" is defined in A.R.S. § 13–105 as "an act or omission and its accompanying culpable mental state," while an "act" is defined to mean bodily movement. "Step" is not specifically defined by the code, but its common usage does include an act or action. Webster's, New Collegiate Dictionary (Rev.Ed.1975). Since the rule of construction, A.R.S. § 13–104, requires that the statutes be construed according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes stated in Section 13–101, we believe that the legislature merely intended to simplify the language of A.R.S. § 13–1001(A)(2) by using "any step" as opposed to "substantial step." Indeed, in applying the other sections of the code, cited above, this conclusion is inescapable.

Further, we find no real significance in the legislature's use of the word "step" in the revised statute instead of the word "act" except that the wording change provides clarification that an "omission to act" may be sufficient to prove an attempt to commit a crime. Our courts frequently use the two words synonymously. *See, e.g., State v. Dale,* 121 Ariz. 433, 590 P.2d 1379 (1979); *State v. Harvill, supra; State v. Mandel,* 78 Ariz. 226, 278 P.2d 413 (1954). Certainly words can constitute a "step." Our Supreme Court has expressly held in *State v. Dale supra,* that "words may be acts sufficient to sustain a conviction for an attempt when viewed in the light of the circumstances in which they were uttered." *Id.* 121 Ariz. at 435, 590 P.2d at 1381. In *Dale,* the twenty-six-year-old defendant told the seventy-nine-year-old victim that he wanted his wallet and that if he had to hit him to get it, he would kill him. The defendant had not made any physical gesture towards the victim, but the court found that in those particular circumstances, the verbal demand for the wallet and verbal threat of violence constituted an attempt to rob the victim.

■ Appellant also makes much of the fact that he did not threaten the girls or try to use any force against them. A.R.S. § 13–1405 proscribes *all* sexual conduct with a minor unless the minor is the person's spouse. When a person has participated in sexual conduct with a minor, he is equally guilty of the crime whether he forced himself upon the minor or whether he succeeds in persuading the minor to allow the sexual act to take place. That the minor consented does not prevent the act from being a crime.

In this particular situation the appellant spoke words to the young girls that indicated he wanted to have oral sexual contact

---

**3.** § 13–101. Purposes

It is declared that the public policy of this state and the general purposes of the provisions of this title are:

1. To proscribe conduct that unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests;

2. To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction;

3. To define the act or omission and the accompanying mental state which constitute each offense and limit the condemnation of conduct as criminal when it does not fall within the purposes set forth;

4. To differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each;

5. To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, and

6. To impose just and deserved punishment on those whose conduct threatens the public peace.

with them. Considering the age of the young girls, and appellant's conduct in driving his vehicle up to each victim, his words constituted acts sufficient to sustain a conviction for attempt viewed in light of the circumstances in which they were uttered. The more difficult question is whether appellant intended to commit the crime if he were successful in persuading any of the girls to accept his offer. Obviously situations can be envisioned in which a person might make a similar statement merely to shock his listener or for some other such purpose, never meaning to carry out the sexual act suggested. Although the making of such statements would be tasteless and reprehensible, especially when made to children, the remarks alone with no intention of carrying out the acts would not be punishable under the statutes charged in this case.

Under the facts *sub judice* though, there is no indication that appellant was merely making flippant remarks to the young girls with no plan to carry out the acts even if the girls would agree to let him. Appellant approached not just one girl, but four within a very short span of time. He did not merely ask to be allowed to perform the sexual acts, but offered to pay them money if the girls would let him do the acts. In one instance he drove away and returned shortly offering to pay more money and asking them "please." The total factual picture shows a man determined to find a young girl he could entice with money to allow him to have oral sexual contact with her. We find that intent on the part of defendant to carry out the crime is substantially established from this set of circumstances and therefore that the crime of "attempted oral sexual contact" was appropriately charged.

Appellant cites *Gervin v. State,* 212 Tenn. 653, 371 S.W.2d 449 (1963) to persuade us that solicitation should be considered a form of attempt. We find nothing wrong with the general principles enunciated in *Gervin.* The Tennessee court reasons very soundly that the concepts of solicitation and attempt are separate crimes and should not be merged. The court lists numerous authorities in agreement that mere criminal solicitation of another to commit a crime does not constitute an attempt. Under the facts in *Gervin,* though, and as is the usual case where mere solicitation and not attempt is involved, the defendant was trying to have another person commit a crime in which the defendant would have no personal involvement other than to solicit the person to commit it. *See State v. Johnson,* 131 Ariz. 299, 302, 640 P.2d 861, 864 (1982) citing in fn. 1, W. LaFave & A. Scott, *Handbook on Criminal Law,* 414 (1972).

In the case before us, the appellant planned to be the perpetrator of the crime. Appellant's "solicitations" of the girls, were not to persuade the girls to commit a crime, but to persuade them to allow him to commit a crime. This does not constitute the crime of solicitation. An example of a solicitation of the crime of committing sexual conduct with a minor would more accurately occur where a person tries to persuade a third party to engage in sexual conduct with a minor. There would be no attempt in that instance since the person soliciting the crime would not be planning to engage in the act himself. Appellant's argument simply has no application to the facts of this case.

## JURY INSTRUCTION

Additionally, we find no error in the trial court's refusal to instruct the jury that it could return a verdict of guilty of solicitation instead of attempted oral sexual contact. We agree with the state that solicitation is not a lesser included offense of attempt. The test of a lesser included offense is whether the first greater offense cannot be committed without necessarily committing the second lesser offense. *State v. Jackson,* 121 Ariz. 277, 589 P.2d 1309 (1979). Obviously, as discussed above, there are many instances in which oral sexual contact with a minor could be attempted without involving any request or solicitation for the minor to engage in the contact.

Appellant argues that the facts in this particular case would have supported a

charge of solicitation. We disagree for the reasons stated above under the correctness of charges section. There is no merit to these arguments.

## SUFFICIENCY OF EVIDENCE

▄ Next, appellant argues that his motion for judgment of acquittal made at the end of the state's case in chief and renewed at the end of trial should have been granted. He argues that the evidence was insufficient to go to the jury and was insufficient for the jury to find him guilty of attempted oral sexual contact with the four minors. Where the evidence raises a question of fact for the jury and where such evidence, if believed, is sufficient to sustain conviction, the denial of a motion for judgment of acquittal is not error. *State v. Jones,* 125 Ariz. 417, 610 P.2d 51 (1980). In reviewing the evidence, the appellate court is only concerned with whether there is substantial evidence in the record to support the verdict. Such evidence will be considered in the light most favorable to support the verdicts and all reasonable inferences drawn from the evidence will be resolved against the appellant in favor of the verdict. *State v. Childs,* 113 Ariz. 318, 553 P.2d 1192 (1976).

▄ Appellant pursues various themes in his argument that the evidence was insufficient. Besides appellant's claim that the evidence supported charges merely of solicitation and not of attempt, which has been disposed of above, appellant claims that the conflict in the identification testimony makes it impossible to sustain his conviction for any of the charges. Additionally, appellant claims that since P.S. could not remember the words spoken which constituted the step in furtherance of the crime, he could not be convicted for attempted criminal acts against her. Also, appellant contends that since the words spoken to J.N. did not indicate that any oral sexual contact was being suggested, he could not be convicted for attempted criminal acts against her. Appellant finally claims that the words of request to kiss the girls between their legs were too vague to come within the oral

sexual contact proscribed by A.R.S. §§ 13–1401 and 13–1405.

As discussed earlier in this opinion, it is true that not all of the young girls were able to identify appellant as the perpetrator of the crime when shown the photo array and/or the full body lineups. The identification testimony of any one of the girls or of all of them, though, was just one portion of the evidence to be considered by the jury in determining whether appellant was guilty of any one or all of the charges against him. J.N. who had the most number of occasions to see the man who had approached her, picked appellant's photo and a photo of another man merely as resembling the man in question, but she was very certain at the body lineup that appellant was the man. J.F. also had several chances to see the man who approached her. She thought appellant's photo resembled the man. Although she failed to name anyone for the police at the body lineup, she told her parents a few minutes after leaving that she thought that number six, who was the appellant, was the man. This witness's reluctance to point out appellant to the police was consistent with her extreme embarrassment in testifying at trial. M.S. missed in one instance and identified the appellant in another, while P.S. did not select the appellant in either instance. These two girls did not have as much opportunity to see the man who spoke to them. It was certainly not unusual that the girls were not totally consistent in making the identifications given the poor quality of picture used of the appellant and the similarity in appearance of the subjects used at the body lineup. Although the identifications of the appellant were less than perfect, the appellant closely fit the physical description given to the police by each of the girls at the time of the event. Although some of the girls described the truck's color in slightly different ways, they all appeared to be describing the same vehicle. In each instance a truck described as being green or bluish gray was seen pulling a red trailer. The truck was consistently described as being old and scratched up. The appellant

was found to own the truck and trailer fitting the description.

Added to this evidence were the facts that the three incidents occurred within a very short span of time on the same day and within a very small geographical radius of each confrontation. Further, the alibi testimony provided by appellant's wife and brother was contradicted by the testimony of a disinterested third party witness, Nellie Holt, who gave testimony from which the jury placed appellant at the scene of the incidents during the time frame involving the young girls. We find there was sufficient evidence for the jury to conclude that the appellant was the man involved in each incident.

P.S.'s inability to remember relevant parts of what appellant had said to her would not prevent appellant from being convicted of the charge as to her as long as there was other substantial evidence of the crime. M.S., who was with P.S. when the incident occurred, remembered the words and verified that the words were directed both at her and at P.S. Moreover, the mothers of the two girls testified that P.S. was able to tell them what was said immediately after the incident occurred. We find there was sufficient evidence for the jury to find that appellant's attempted oral sexual contact included an attempt against P.S.

Whether there was substantial evidence to find appellant guilty of attempting oral sexual contact with J.N. depends on the meaning of appellant's request to put his head between her legs and take a picture. Clearly, a person can say certain words and mean something entirely different. That a different meaning is intended can be proven by circumstantial evidence. In *State v. Vann,* 11 Ariz.App. 180, 463 P.2d 75 (1970), although a "gift" of twenty dollars was requested from the victim by the defendant it was evident from the surrounding circumstances that a robbery was being attempted. Because the words spoken to J.N. were so strange and because they closely followed appellant's requests to three other girls to "kiss them between the legs," we

find there was substantial evidence upon which the jury could find that appellant's criminal intent as to J.N. was the same as that towards the other three girls.

Appellant's further contention that his words of request to kiss the girls between their legs were too vague to come within the oral sexual contact proscribed by A.R.S. §§ 13–1401 and 1405 is without merit. We have no doubt that defendant was requesting "oral sexual contact" as defined in A.R.S. § 13–1401.

In summary, we find that the evidence was sufficient to support the jury verdicts of guilty on each of the four charges.

### SENTENCE

 Next, the appellant argues that the trial court's sentence of concurrent ten-year terms on each of the three felony counts is excessive. It has been repeatedly stated in Arizona case law that the trial judge is in the best position to study the defendant, and his discretion in the matter of sentencing will not be disturbed except in the most unusual circumstances provided it is within the statutory limits. *State v. Thomas,* 110 Ariz. 106, 515 P.2d 851 (1973). The trial judge's judgment will not be overturned unless it clearly appears that the sentence is too severe, *State v. Seelen,* 107 Ariz. 256, 485 P.2d 826 (1971), or that the trial judge abused his discretion in determining the sentence. *State v. Stewart,* 118 Ariz. 281, 576 P.2d 140 (App.1978). A.R.S. § 13–701 provides that the presumptive sentence for a class three felony is 5 years. The trial judge may increase the sentence up to 100% or reduce it by as much as 25%, pursuant to A.R.S. § 13–702, based on the existence of aggravating or mitigating circumstances. In this case the court found aggravating circumstances and no mitigating circumstances and thus the ten-year sentences were within the statutory limits. The trial court cited appellant's lengthy criminal record as providing aggravating circumstances. In determining the sentence, the trial judge may properly consider prior crimes and the criminal character and history of the defendant as well as informa-

tion contained in the presentence report. *State v. Ellis*, 117 Ariz. 329, 572 P.2d 791 (1977). Contrary to appellant's allegations on appeal, the trial judge did not find his flight and failure to appear for trial and his treatment of his wife to be aggravating circumstances. The trial judge merely indicated that appellant's behavior in this regard had kept his attorney from finding any mitigating circumstances to call to the court's attention. We find nothing improper about the trial court's remark that there will be "psychological counseling in the prison when the shrimp in the Mississippi Delta start whistling Dixie." The trial judge merely used a picturesque phrase to describe what he perceived to be a lack of counseling facilities in the Arizona prisons in responding to appellant's attorney's suggestion that providing counseling would be a more appropriate method of handling the defendant than imprisonment. In light of the foregoing, we cannot say that the trial judge abused his discretion or that the sentence in this case is excessive.

■ One additional argument the appellant appears to be making about his sentence is that someone who merely tries to persuade a minor to engage in sexual contact with him should not be punished as severely as someone who tries to compel the minor to engage in sexual contact by using verbal threats or physical force on the minor. The statute, however, does not distinguish between these two situations. Clearly, the legislature has determined as a matter of public policy that minors should not be deemed capable of knowingly consenting to such sexual contact and it has therefore determined that the act of trying to persuade a minor to engage in sexual contact should be punished with the same severity as the act of trying to force a minor to engage in sexual contact. We find no constitutional infirmity in the statute and we do not find it appropriate for the court to substitute its judgment for that of the legislature.

## TRIAL IN ABSENTIA

Finally, appellant argues that it was reversible error to try him in absentia. Prior to trial defense counsel objected to the appellant being tried in absentia on the ground that there was insufficient proof that he had voluntarily absented himself. Defense counsel requested a formal ruling by the court as to whether the appellant in fact voluntarily absented himself. The trial court denied the defense counsel's requests and ordered that the trial proceed in the appellant's absence. The trial court observed that there was no evidence in the record suggesting appellant's absence was not voluntary and that, therefore, the appellant would automatically be considered to have absented himself voluntarily without the trial court having to make a formal finding.

■ Rule 9.1, Rules of Criminal Procedure, 17 A.R.S. provides that a defendant may waive his right to be present at any proceeding by voluntarily absenting himself from it and that "[t]he court may infer that an absence is voluntary if the defendant had personal notice of the time of the proceeding, his right to be present at it, and a warning that the proceeding would go forward in his absence should he fail to appear." When the record demonstrates that such notice has been provided, the trial court may presume the absence is voluntary and the burden is on the defendant to demonstrate otherwise. There is no due process requirement for the trial court to hold a hearing on the question of the voluntariness of the absence unless the defendant meets this burden. *State v. Bohn*, 116 Ariz. 500, 570 P.2d 187 (1977); *State v. Goldsmith*, 112 Ariz. 399, 542 P.2d 1098 (1975).

The record in this case shows that at the arraignment, the trial court advised the appellant that:

> . . . should you make release on this matter, a term and condition of any release order [sic] that you have a right to be present at any hearings held in conjunction with the case. You also have a right to voluntarily absent yourself, and what that means is if the Court determines that you have voluntarily absented yourself, then that proceeding could be held in

your absence, and that would include the trial.

Therefore, it is up to you to stay in touch with your attorney at all times in the event there are any changes in these present settings.

Do you understand that?

The appellant stated that he understood the court's warning. Additionally, when appellant was released on his own recognizance, the release order that the appellant signed contained the following warning:

You have a right to be present at your trial and at a number of other proceedings of which you will be notified. If you do not appear at the time set by the Court, a warrant will be issued for your arrest *and the proceeding will begin without you.* (Emphasis in original.)

When defense counsel presented his objection to the trial proceeding in absentia and requested the formal finding from the trial court, defense counsel admitted that he had personally advised appellant of the trial date and that the appellant had failed to contact him during the past three to four weeks. Defense counsel offered no evidence to suggest that appellant's absence was anything but voluntary.

Under these circumstances the trial judge was entitled to infer that appellant's absence from trial was voluntary. Clearly, the trial judge did not abuse his discretion by not holding a hearing on the issue of the voluntariness of defendant's absence and by not making the special findings requested by defense counsel. Moreover, in passing, we also note that when appellant was eventually found, arrested, and returned to Arizona, he admitted to the probation officer that the reason for his absence was that he got scared and ran.

For the foregoing reasons, defendant's convictions and sentences are affirmed.

HAIRE, P.J., and MEYERSON, J., concur.