**Rodney G. SULLIVAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2229.

Court of Appeals of Alaska.

Dec. 23, 1988.

Jeffrey F. Sauer, Asst. Public Defender, Sitka, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Rodney G. Sullivan was convicted, after a bench trial, of attempted sexual abuse of a minor in the second degree, a class C felony. AS 11.41.436(a)(2). Superior Court Judge Thomas E. Schulz sentenced Sullivan, a first felony offender, to a term of five years with one year suspended. On appeal, we vacated Sullivan's conviction, finding that the trial court had relied on an erroneous interpretation of the second-degree sexual abuse statute. We remanded the case for determination of two issues: first, whether Sullivan was guilty of attempted sexual abuse in the second degree under another theory; and, second, whether Sullivan was guilty of any lesser-included offenses.

On remand, Judge Schulz again found Sullivan guilty of attempted sexual abuse in the second degree. He alternatively found that the evidence supported conviction of Sullivan for contributing to the delinquency of a minor, a class A misdemeanor, AS 11.51.130, as a lesser-included offense.

Sullivan again appeals, challenging his conviction for attempted sexual abuse and challenging the lesser-included offense finding. Sullivan also challenges his sentence as excessive. We conclude that there was insufficient evidence to convict Sullivan of attempted sexual abuse, but affirm Sullivan's conviction of contributing to the delinquency of a minor. Our disposition renders it unnecessary to consider Sullivan's sentencing argument.

## FACTS

In September of 1984, Sullivan was staying in Ketchikan at the house of a friend, who had asked Sullivan to help keep an eye on her three children while she was on vacation for two weeks. During this period, various neighborhood children had been given permission to enter the house and to play with the family dog.

One day while several children were at the house, Sullivan approached D.T., an eight-year-old girl, and offered to "give [her] some money if [she] would be his girlfriend." She replied, "No." That same day, Sullivan gave D.T. and another girl, K.W., a note. According to D.T., the note read: "Will you be my girlfriend? Will you kiss me? Will you take off your clothes? Will you get another girlfriend for me?" The note also included boxes for "yes" and "no" responses. Sullivan paid D.T.'s seven-year-old brother, J.T., two dollars to deliver the note. At some point during that day, Sullivan locked J.T. into a room because, according to J.T., Sullivan "wanted to tell [D.T.] a nasty letter." Sullivan also told J.T. that he wanted to invite D.T. "and a whole bunch of other people" to a party, and that "the only parties he had is bad parties" with girls. D.T. received at least ten or twelve other notes from Sullivan while she was at his house that day. She did not remember what the other notes said.

K.W. remembered that D.T. read her a note that Sullivan had given them. The note asked, "Do you want to be my girlfriend?" and stated, "I'll give you a thousand dollars if you do." K.W. also remembered that Sullivan asked the girls if they would take off their clothes in front of him.

H.T., a nine-year-old girl, was also at Sullivan's house with D.T., K.W., and J.T. She read the note Sullivan gave to D.T. and K.W. H.T. recalled the four questions that D.T. described, although she added that there was a fifth question, which she could not recall. H.T. heard Sullivan ask K.W. and D.T. to take off their clothes "a lot of times." She recalled that Sullivan showed the children pictures of "naked ladies" in Playboy magazine and that he gave the

three girls "tests" with such questions as, "Will you go to bed with me?" and, "Will you marry me?"

On a later day, D.T. received another note from Sullivan, this time delivered to her by J.T. at home. The note said that if D.T. agreed to answer "a lot of questions, [Sullivan] would have a party." D.T. destroyed the note.

D.T. subsequently reported the notes to her mother, who notified the Ketchikan police. During police questioning, Sullivan acknowledged the incidents and attempted to reconstruct his original note to D.T. The reconstructed note read:

> I really like you a lot. I would be proud to have you as my girlfriend. So I'm going to ask you some questions. Will you go with me? Will you kiss me? Will you let me feel private parts of your body? Will you take off all of your clothes in front of me? And will you let me kiss the private parts of your body? I really hope you do some of these thing in the questions.

Sullivan was subsequently indicted on one count of attempted sexual abuse in the second degree. The indictment charged:

> That on or about September, 1984, at or near Ketchikan ... RODNEY G. SULLI-VAN, being 16 years of age or older, did unlawfully and intentionally attempt to engage in sexual contact with a person under the age of 13, to-wit: by giving a note to D.T., [Date of Birth]: 11–11–75. . . .

## SUFFICIENCY OF EVIDENCE TO SHOW ATTEMPTED SEXUAL ABUSE OF A MINOR IN THE SECOND DEGREE

■ Sullivan argues that there is insufficient evidence to support his conviction for attempted sexual abuse. On review, this court must view the evidence and the inferences to be drawn from it in the light most favorable to the state and must affirm unless fair-minded jurors would necessarily agree that the state failed to carry its burden of proof beyond a reasonable doubt. *Abdulbaqui v. State*, 728 P.2d 1211, 1214 (Alaska App.1986).

Alaska Statute 11.31.100(a) sets out the elements of an attempt:

> [A] person is guilty of an attempt to commit a crime if, with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime.

In order to constitute a "substantial step," conduct must go beyond mere preparation. *Gargan v. State*, 436 P.2d 968, 971 (Alaska 1968). Whether an act is merely preparatory or is "sufficiently close to the consummation of the crime to amount to attempt, is a question of degree and depends upon the facts and circumstances of a particular case." *Braham v. State*, 571 P.2d 631, 637 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978).

Under AS 11.41.436(a),

> [a]n offender commits the crime of sexual abuse of a minor in the second degree if
>
> . . . .
>
> (2) being 16 years of age or older, the offender engages in sexual contact with a person who is under 13 years of age. . . .

Sexual contact is defined as "knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast." AS 11.81.900(b)(52)(A).

Sullivan claims that the state failed to produce evidence that he had taken a "substantial step" toward having sexual contact with a minor. Sullivan advances two arguments in support of his claim: 1) that his conduct amounted to no more than solicitation, and therefore cannot constitute a "substantial step;" and, 2) that the acts he solicited from D.T. would not have amounted to sexual contact under AS 11.81.-900(b)(52)(A).

In *Braham v. State*, the Alaska Supreme Court established that solicitation is merely preparatory conduct and is therefore insufficient to constitute a "substantial step." 571 P.2d at 637, 638 n. 10. Braham solicited an acquaintance to kill a third party for $600. Braham instructed his acquaintance to visit the intended victim at the hospital and deliver a fictitious message to him. The

acquaintance did so; shortly thereafter, he abandoned the murder plans and became a police informant. Braham was convicted of attempted murder. On appeal, he challenged the sufficiency of the evidence to support his conviction.

The issue before the supreme court was whether Braham had committed an attempt or whether his acts amounted to a mere solicitation. The court reasoned that the purpose of the hospital visit by Braham's acquaintance was to "establish a relationship of trust and confidence" with the victim in order to facilitate the commission of the offense. *Id.* at 638. The court concluded that the hospital visit was "a direct, unequivocal 'act toward the commission of the crime' of murder" within the meaning of the attempt statute [1] and that the evidence was therefore sufficient to support a guilty verdict on the attempt charge. *Id.* at 638.

The circumstances of the present case are distinguishable from the facts in *Braham* in two respects: 1) there was no agreement between Sullivan and another person to commit a crime, and 2) Sullivan did not engage in any activity toward completion of his crime after he solicited the commission of an offense by delivering a note to D.T. These distinctions are significant. At the very least, *Braham* requires that a solicitation be met with agreement and that there be some further act beyond agreement. The line dividing preparation from attempt falls between the agreement to commit a crime and the subsequent act in furtherance of it. By contrast, in the present case, all of Sullivan's acts occurred prior to, and in preparation for, the solicitation. There was no act beyond solicitation.

The state nevertheless argues that Sullivan's acts, when viewed together, consti-

tute a substantial step toward engaging in sexual contact with D.T. However, according to the state's own account, Sullivan engaged in these acts in preparation for the solicitation itself. For example, at trial the state claimed that Sullivan had written his notes in test format, in order to convince the children that "what he was doing was good" so that they would want to "pass [the] test." Likewise, the state argued at trial that Sullivan showed the children pictures of naked women "so that they would be in the mood where he could have sexual contact with them once he persuaded them to get their clothes off." [2] Although these acts may support an inference that Sullivan had a plan to seduce young girls, they amount to no more than preparatory conduct under *Braham*. The fact that Sullivan took steps to ensure that his solicitation would be successful does not convert the solicitation into a substantial step.

The state also relies on the Model Penal Code in support of its position. Alaska's attempt statute was based in part on *Model Penal Code* Part 1, Art. 5 § 5.01 (1985), which requires that a person,

> acting with the kind of culpability otherwise required for commission of the crime
>
> .    .    .    .    .
>
> purposely does or omits to do anything that . . . is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

The Model Penal Code lists actions that constitute a substantial step, including "enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission" and "solicit-

---

1. The attempt statute then in effect imposed criminal liability on "[any] person who attempts to commit a crime, and in the attempt does *any act* toward the commission of the crime, but fails, or is prevented or intercepted in the perpetration of the crime . . ." Former AS 11.05.020 (repealed, ch. 166 § 21 SLA 1978) (emphasis added).

2. Psychiatric testimony was also presented below indicating that, in soliciting D.T., Sullivan

almost reached the point at which he was no longer capable of restraining himself from engaging in an act of molestation. The state relies on this evidence to support its assertion that Sullivan's conviction was proper. The psychiatric evidence, however, while highly probative on the issue of Sullivan's intent, does nothing to establish that he committed an act beyond setting the stage by solicitation of his intended victim.

ing an innocent agent to engage in conduct constituting an element of the crime." *Model Penal Code* Part 1, Art. 5 § 5.01(2)(b), (g) (1985). This list is quoted in its entirety in the Alaska Criminal Code Revision, Part 2 at 73–74 (Tent. Draft 1977).

The state suggests that Sullivan's conduct amounted to "enticing or seeking to entice" D.T. However, the trial court specifically found that Sullivan never sought to entice D.T. to a place where he could molest her. Instead, the evidence shows that Sullivan solicited D.T. when she went to Sullivan's house voluntarily to look after his roommate's dog. The explanatory note to Model Penal Code § 5.01 distinguishes enticement into a vehicle or building from "merely solicit[ing] cooperation in a sexual act," as occurred in this case. *Cf., State v. McJunkin,* 27 Or.App. 401, 556 P.2d 164 (1976) (a defendant who sought to entice a nine-year-old girl into his pickup truck and expressed his desire to have sexual intercourse with her was properly convicted of attempted first-degree rape).

The "innocent agent" provision of the Model Penal Code is likewise inapplicable. This provision is meant to apply when the defendant commits "the last guilty act" by soliciting the commission of a criminal act by a person who is unaware that the solicited act is a crime. *See* R. Perkins and R. Boyce, Criminal Law 652–53 (3d ed. 1982). By contrast, in the present case, Sullivan would have had to perform further "guilty acts" beyond the solicitation to succeed in having sexual contact with D.T.

■ Other states that have considered whether soliciting a child to have sexual contact is enough to establish attempted sexual abuse have reached disparate conclusions. *Compare People v. LaFontaine,* 79 Cal.App.3d 176, 144 Cal.Rptr. 729 (1978)

with *State v. Fristoe,* 135 Ariz. 25, 658 P.2d 825 (Ariz.Ct.App.1982); *State v. McJunkin,* 27 Or.App. 401, 556 P.2d 164 (1976); and *State v. Graham,* 70 Or.App. 589, 689 P.2d 1315 (1984), *review denied,* 298 Or. 597, 695 P.2d 50 (1985).

In a case with facts similar to the present case, *People v. LaFontaine, supra,* a California appellate court held that mere verbal solicitation of a sexual act did not amount to an attempt to commit a "lewd or lascivious act" upon the body of a child.[3] The defendant, LaFontaine, picked up a thirteen-year-old hitchhiker and offered to give him money if he allowed LaFontaine to give him "a blow job." LaFontaine never touched or attempted to touch the child, who refused and got out of the car. The court held that LaFontaine's act of solicitation was mere preparation and, as such, was not an "unequivocal act" necessary for an attempt. 144 Cal.Rptr. at 733.

Appellate courts in both Arizona and Oregon have indicated that a verbal solicitation may be a "substantial step." In *State v. Fristoe, supra,* the defendant contended that he should have been charged with solicitation rather than attempt. In three separate incidents, Fristoe had pulled up in his truck beside girls age fifteen or younger and offered them five dollars to "kiss between their legs." When the girls refused, Fristoe drove away. During one of the incidents, Fristoe returned after the initial refusal and raised the offer to twenty dollars. In none of the incidents did Fristoe make any further motion toward the girls. *Id.* 658 P.2d at 829. The trial court convicted Fristoe on four counts of attempted oral sexual contact with minors.

The appellate court affirmed, concluding that "words can constitute a 'step'" under the attempt statute[4] and that, given the "total picture," an attempt had been committed. In rejecting Fristoe's argument

---

**3.** Under the California statute,
Any person who shall willfully and lewdly commit any lewd or lascivious act ... upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony....

Cal.Penal Code § 288(a) (West 1988).

**4.** The Arizona attempt statute imposes attempt liability when defendant has performed *"any step* in a course of conduct planned to culminate in commission of an offense." Ariz.Rev. Stat.Ann. § 13–1001(A)(2) (1978) (emphasis added). On its face, this appears to be a less stringent requirement than the "substantial step" re-

that a solicitation cannot be an attempt, the court distinguished between situations in which the defendant solicits a third party to commit a crime and situations in which the defendant himself intends to be the perpetrator. According to the court, in the first situation there is a solicitation but no attempt; in the second, there is an attempt but no solicitation. Because Fristoe had not attempted to persuade the girls to commit a crime but had solicited them in order that he might commit a crime himself, the court concluded that he was guilty of attempt rather than solicitation. *Id.* at 831. *Accord State v. Graham,* 70 Or.App. 589, 689 P.2d 1315 (1984), *review denied,* 298 Or. 597, 695 P.2d 50 (1985).

We reject the distinction drawn by the Arizona court in *Fristoe.* As the California Court of Appeals noted in *LaFontaine*

> We see no logic or reason to carve out of the general principles … an exception that *certain acts* of solicitation, which otherwise constitute preparation only, should be considered as going beyond preparation to constitute the offense of an attempt, because of the type of crime being solicited. The fact that the person solicited is needed for the consummation of the offense cannot logically or reasonably change the character of a defendant's acts from mere preparation to an unequivocal act to commit the ultimate offense or to constitute some fragment of the crime which is alleged to have been attempted.

144 Cal.Rptr. at 733 (emphasis in original).

Drawing all inferences in favor of the state in the present case, the evidence

presented at trial establishes only that Sullivan engaged in preparatory conduct and not that he took a substantial step toward sexual contact with D.T.[5] We therefore reverse Sullivan's conviction of attempted sexual abuse of a minor in the second degree.

## CONTRIBUTING TO THE DELINQUENCY OF A MINOR AS A LESSER–INCLUDED OFFENSE

■ On remand, the trial court concluded that even if the evidence did not establish attempted sexual abuse, Sullivan was guilty of contributing to the delinquency of a minor, a crime that the court found to be a lesser-included offense of attempted sexual abuse under the circumstances of the present case. Sullivan challenges the trial court's finding.

■ An offense is a lesser-included offense of the charged offense when it is impossible to commit the charged offense without committing the lesser offense and when conviction of the greater offense requires the jury to find a disputed fact that is not required for conviction of the lesser. *Abdulbaqui v. State,* 728 P.2d 1211, 1214 (Alaska App.1986). Under the cognate approach, the focus is on the facts charged in the indictment and the evidence presented at trial rather than on the statutory elements of the greater and lesser offenses. *Elisovsky v. State,* 592 P.2d 1221, 1226 (Alaska 1979); *State v. Minano,* 710 P.2d 1013, 1016 (Alaska 1985).

---

quired in Alaska. However, the court in *Fristoe* concluded that the "any step" requirement was identical to the "substantial step" requirement used in other states, and emphasized that it does not impose liability for mere preparatory conduct. 658 P.2d at 830.

5. Although Sullivan's conduct did not qualify as an attempt, it seems to us that his solicitation of D.T. may well have constituted a violation of AS 11.31.110(a), which provides:

> A person commits the crime of solicitation if, with intent to cause another to engage in conduct constituting a crime, the person solicits the other to engage in that conduct.

Alaska Statute 11.31.110(b)(1)(B) expressly provides that, in a prosecution for solicitation, it is

not a defense "that a person whom the defendant solicits could not be guilty of the crime that is the object of the solicitation." Under AS 11.31.110(c)(3), soliciting a person to commit the offense of sexual abuse of a child in the second degree would, like attempt, be punishable as a class C felony. While it is conceivable that Sullivan could have been convicted of solicitation, the state did not charge him under AS 11.31.110. The trial court, applying the cognate approach, concluded that solicitation was not a lesser-included offense of attempt. The state has not challenged the court's conclusion, and, on appeal, neither party has addressed the applicability of Alaska's solicitation statute. Under these circumstances, we do not decide the issue.

.  .  .

Alaska Statute 11.51.130(a)(1) provides that a person contributes to the delinquency of a minor if that person "aids, induces, causes, or encourages a child under 18 years of age to do any act prohibited by state law." The indictment charged that Sullivan attempted to engage in sexual contact with D.T. by giving her a note. Evidence was presented to show that, by means of the note, Sullivan encouraged D.T. to engage in sexual contact with him. Even if Sullivan did not commit an act qualifying as an attempt, under AS 11.51.-130, his encouragement of D.T. to have sexual contact with him would amount to contributing to the delinquency of a minor if an act of sexual contact by D.T. could be deemed "an act prohibited by state law." Whether or not contributing to the delinquency of a minor (contributing) is a lesser-included offense of attempted sexual assault of a minor in the second degree thus depends on how the phrase "to do any act prohibited by state law" is construed.

Sullivan argues that contributing can never be a lesser-included offense of attempted sexual abuse because under the statute defining sexual abuse, only the adult is guilty of an offense when sexual contact occurs between an adult and a child, whereas under the contributing statute the adult must encourage the child to violate the law. According to Sullivan, since D.T. herself would not have violated the law if Sullivan had succeeded in having sexual contact with her, Sullivan did not encourage D.T. to violate the law. In response, the state urges this court to construe the phrase "to do any act prohibited by state law" to include acts that violate laws enacted for the protection of minors, even when the minor could not be prosecuted for the act.

The state's interpretation of AS 11.51.130 is consistent with the statutory history of the provision. When a statute is adopted from another jurisdiction, the settled interpretation of the statute by that state's highest court at the time of its adoption is presumed to be adopted as well. *Zerbe v.*

*State*, 583 P.2d 845, 846 (Alaska 1978).[6] Alaska Statute 11.51.130(a)(1), as amended in 1980, was adopted from the corresponding Arkansas statute. The commentary to that statute provides, in relevant part:

> [S]ubsection (1)(a) ... is directed at the adult who encourages the minor to engage in conduct prohibited by law. Such conduct includes not only violation of criminal statutes but also *contravention of statutes designed to protect minors*, whether or not they define an offense. For example, ... Ark.Stat.Ann. § 41–2468 to 41–2470 prohibits the tattooing of minors without the parents' consent, although the minor commits no offense by obtaining a tattoo. However, if an adult induced a minor to submit to being tattooed by a third party, the adult would be guilty of contributing to the minor's delinquency.

Ark.Stat.Ann. § 41–2406 commentary (1977) (emphasis added). Under this interpretation, Sullivan, by encouraging D.T. to have sexual contact with him, encouraged D.T. to engage in conduct prohibited by law.

The state's interpretation is also consistent with the purpose of the Alaska contributing statute. In applying Alaska's former contributing statute, the Alaska Supreme Court held that its purpose was to protect children under the age of eighteen. *Anderson v. State*, 384 P.2d 669, 671 (Alaska 1963); *Hanby v. State*, 479 P.2d 486, 498 (Alaska 1970). Although the statute was substantially amended in 1978, the legislative history indicates that the intent of the amendments was to eliminate problems of vagueness, and not to change the statute's overall purpose. *See* Alaska Criminal Code Revision Part 2 at 67–68 (Tent. Draft 1977). The state's interpretation of AS 11.-51.130 would promote the statute's goal of protecting minors without creating any incidental problems of vagueness. Applying this interpretation, we find that the trial court properly treated the crime of contrib-

---

**6.** The presumption is not conclusive, but is rather a rule of statutory construction based on

convenience. *Zerbe*, 583 P.2d at 847.

uting to the delinquency of a minor as a lesser-included offense.

 While there was insufficient evidence to support Sullivan's conviction for attempted sexual abuse of a minor, there was ample evidence to support his conviction for contributing to the delinquency of a minor. Evidence was admitted at trial that Sullivan wrote notes to D.T. telling her he "really hope[d]" that she would let him "feel her private parts." A reasonable person could conclude that by writing this note, Sullivan was encouraging D.T. to engage in sexual contact with him, an act prohibited by state law. We therefore affirm Sullivan's conviction for contributing to the delinquency of a minor.[7]

The judgment of conviction for sexual assault in the second degree is VACATED. This case is REMANDED for imposition of sentence and entry of judgment on the lesser offense of contributing to the delinquency of a minor.

7. Our reversal of Sullivan's conviction for attempted sexual abuse of a minor requires the sentence imposed for that offense to be vacated. Accordingly, we need not consider Sullivan's contention that his sentence is excessive. On remand, the superior court will be required to resentence Sullivan on the lesser-included offense of contributing to the delinquency of a minor. Sullivan will, of course, have the right to appeal the sentence imposed for that offense.