Harold "Frenchy" BRAUN, Appellant,

v.

STATE of Alaska, Appellee.

No. 1463.

Court of Appeals of Alaska.

March 1, 1996.

David E. George, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

### OPINION

MANNHEIMER, Judge.

Following a jury trial in the superior court, Harold "Frenchy" Braun was convicted of three counts of second-degree sexual abuse of a minor, AS 11.41.436(a)(2), one count of attempted second-degree sexual abuse of a minor, and six counts of soliciting the offense of unlawful exploitation of a minor, AS 11.41.455(a). Braun now appeals these convictions. With regard to the sexual abuse charges, Braun argues that there was insufficient evidence to support his convictions. We affirm these convictions. With regard to the solicitation charges, Braun contends that his actions did not violate the solicitation statute. We agree with Braun, and we therefore reverse his solicitation convictions.

All of the charges in this case stem from Braun's conduct toward several neighborhood girls who played at his house in 1990 and 1991. Braun, who was 63 years old, frequently gave the girls snack food and candy; he would play games with them and take photographs of them with his camera.

One of these girls, T.C., testified that, on one occasion when she was playing at Braun's house, Braun asked her to lower her pants so that he could "peek at her privates". He offered her peanuts if she would do this. Braun also asked T.C. if she would allow him to take her photograph while she was naked. Another girl, P.B., was also present during this incident. Both girls ran out of Braun's house.[1]

In addition to corroborating T.C.'s account of the incident described in the previous paragraph, P.B. testified that Braun had offered to give her two dollars if she would pull down her pants. P.B. also testified that Braun would put his hand underneath her shirt and rub her chest when she sat on his

lap. She further testified that Braun once suggested that they (she and Braun) both take off all their clothes so that Braun could photograph them naked.

M.V., a sixth grader, testified that Braun asked her to go to the basement along with another girl, C.W., and to take off her clothes, so that Braun could then come down to look. M.V. became frightened and left.[2] M.V. described another incident in Braun's kitchen, in which Braun reached around M.V. from behind and touched her breasts through her clothes while he hugged her. M.V. also testified that Braun told her that if she took a shower at his house, he "wouldn't peek".

C.S., another sixth grader, testified that Braun had asked her to take her clothes off.

J.N., who was nine years old at the time of Braun's trial, testified that Braun would give her hugs and then "touch [her] bottom". She also testified that Braun "would go underneath [her] clothes".

Before trial, J.N. gave a videotaped statement to Detectives Branchflower and Guillory as part of the police investigation of the case. The jury was permitted to view this videotape. In the interview, J.N. told the detectives that, on one occasion, she and Braun were in his basement, seated on a bed, and that Braun "started to get on top of her". J.N. said that Braun hugged her and then "he pushed [her] twice on his private".

V.W., who was ten years old at the time of Braun's trial, testified that Braun once touched her on her bottom (outside of her clothes) when they were in his bedroom. V.W. stated that Braun had been squeezing and pushing with his hand while he touched her bottom. When V.W. told him to stop, he did. V.W. testified that she had seen Braun touch J.N.'s bottom beneath her clothes.

Braun took the stand in his own defense. He testified that he had lived in his neighborhood for 20 years and that he had always had neighborhood children play at his house. Braun stated that he played hide and seek with the children, that he tickled several of the children, and that he took pictures of

---

1. T.C. was in the second or third grade at the time of this incident; her friend P.B. was in the first or second grade.

2. C.W. testified at Braun's trial and corroborated M.V.'s account of this incident.

them with his Instamatic camera as they played outside. However, Braun denied acting in a sexual manner toward any of the children. In particular, Braun denied ever asking any of the children to take a shower in his house or to allow him to look at their genitals.

Braun testified that he accidentally touched J.N.'s bottom when he had to "scoop" her up one day when she refused to go home. He stated that his hand accidentally got between the elastic of her clothing and her bare skin, but that he immediately withdrew it. Braun also testified that he probably touched C.S., but not for sexual gratification. On cross-examination, Braun also admitted that V.W. "very well could have" seen him put his hand down J.N.'s pants accidentally.

The jury convicted Braun of all ten counts charged in the indictment: three counts of second-degree sexual abuse of a minor (sexual contact with a child younger than thirteen), one count of attempted second-degree sexual abuse of a minor, and six counts of soliciting unlawful exploitation of a minor.

### Sufficiency of the Evidence to Support Braun's Convictions for Sexual Abuse of a Minor

■ On appeal, Braun argues that there was insufficient evidence to support his convictions for engaging in sexual contact with M.V. and P.B. (Counts I and II of the indictment). Braun asserts that, if he did touch these children's breasts, the touching was inadvertent, not "knowing". He also asserts that, even if he knowingly touched their breasts, this act of touching could reasonably be construed as normal, affectionate interaction with the children. *See* AS 11.81.900(b)(53)(B)(i). However, viewing the evidence in the light most favorable to sustaining the jury's verdicts, *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981), we conclude that the evidence was sufficient to support Braun's convictions of these offenses.

■ Relying on *Potts v. State,* 712 P.2d 385, 388 (Alaska App.1985), Braun also argues that there was no evidence to suggest that he engaged in these acts of touching with the specific intent to obtain sexual gratification. However, *Potts* was decided under

the former definition of "sexual contact". As formerly defined, "sexual contact" required proof that the defendant's act of touching was accompanied by an intent to achieve sexual gratification. *Flink v. State,* 683 P.2d 725, 733 (Alaska App.1984). But following this court's decision in *Flink,* the legislature amended the definition of "sexual contact" for the express purpose of removing "intent to obtain sexual gratification" as an element of the offense. *Van Meter v. State,* 743 P.2d 385, 389–391 (Alaska App.1987). Thus, there was no need for the jury to find that Braun acted with the specific intent of achieving sexual gratification.

■ Braun next argues that there was insufficient evidence to support his conviction for engaging in sexual contact with J.N. (Count III of the indictment). Braun concedes that his trial attorney did not seek a judgement of acquittal on Count III, but he argues that the trial judge's failure to grant Braun an acquittal on this count was plain error.

In support of his plain error argument, Braun points out that J.N. testified only that Braun touched her "bottom". Braun also relies on the portion of the trial when J.N. got up from the witness stand and demonstrated where Braun had touched her; from the contemporaneous comments of the attorneys, it appears that J.N. indicated that Braun touched her buttocks, not her anus as required by the statutory definition of "sexual contact". *See* AS 11.81.900(b)(53)(A). Based on this record, Braun argues that there was plainly no evidence to support a finding that Braun knowingly touched J.N.'s anus.

However, it appears that Braun's conviction for sexually abusing J.N. was based on the evidence that Braun took hold of J.N. by the buttocks and pressed her against his penis. (This evidence was introduced in the form of the videotaped statement that J.N. gave to the police investigators.) When the prosecutor argued Count III to the jury, she stated:

> Now, sexual contact isn't just a grown-up touching a child's genital[s], anus, or female breast. It's also a grown-up having a child touch them . . ., doing something so that the child touches the grown-up's geni-

tals[.] And that's what the count with [J.N.] is. When the defendant had her touch his [penis] . . .

Her testimony was that she felt the defendant's private parts through his clothing when she was pressed towards him. . . . Now, we've all hugged people and accidentally touched breasts and private parts. . . . That's not sexual contact; that's accidental. [But] what [J.N.] is describing is not accidental. [J.N.] is talking about a contrivance so that she felt the defendant's private parts.

Our review of the record demonstrates that there was sufficient evidence to support Braun's conviction for engaging in sexual contact with J.N. under this theory of the crime.

■ In his reply brief, Braun concedes that there was sufficient evidence to establish that he knowingly pressed J.N. against his penis. He argues, however, that because the evidence suggested two potential theories of sexual abuse, the jurors might not have been unanimous as to which theory the State had proved at trial. We disagree. As Braun points out in his opening brief, there was essentially no evidence that Braun touched J.N.'s anus. It would be unreasonable to assume that the jury relied on this theory when they convicted Braun of sexually abusing J.N. There was, however, specific evidence that Braun pulled J.N. toward him, pressing her against his own genitals. As demonstrated by the quoted portion of the prosecutor's summation to the jury, the State expressly relied on this evidence, and this theory of the case, to establish Braun's sexual abuse of J.N. Based on this record, we conclude that there is no reasonable possibility that the jurors disagreed on the theory behind Braun's conviction on Count III.

■ Braun next contends that there was insufficient evidence to support his conviction for attempting to engage in sexual contact with T.C. (Count IV of the indictment). He points out that, at trial, T.C. stated that Braun had merely asked her to remove her pants. However, in T.C.'s videotaped statement to the police investigators, she stated that Braun had actually tried to remove her pants. This videotaped statement was introduced into evidence and played for the jury at Braun's trial.

Braun points out that, even in the videotaped interview, T.C.'s description of Braun's conduct is ambiguous. At one point, T.C. stated that Braun tried to remove her pants, while at another she spoke of Braun's asking her to remove her pants. However, it is the jury's role to resolve conflicts and ambiguities in the evidence. Viewing the evidence in the light most favorable to upholding the jury's verdict, there was sufficient evidentiary support for the conclusion that Braun tried to remove T.C.'s pants. And from this finding, the jury could justifiably conclude that Braun's action had been taken for the purpose of touching T.C.'s genitals. Thus, the evidence was sufficient to support Braun's conviction for attempting to engage in sexual contact with T.C.

For these reasons, we uphold Braun's convictions for second-degree sexual abuse of a minor and attempted second-degree sexual abuse of a minor.

*Sufficiency of the Evidence to Support Braun's Convictions for Solicitation of Unlawful Exploitation of a Minor*

We turn now to Braun's convictions for soliciting the crime of unlawful exploitation of a minor, AS 11.41.455(a). This statute reads:

A person commits the crime of unlawful exploitation of a minor if, . . . with the intent of producing a live performance, film, audio recording, photograph, negative, slide, book, newspaper, magazine or other printed material that visually depicts the conduct listed in (1)–(7) of this subsection, the person knowingly induces or employs a child under 18 years of age to engage in, or photographs, films, records, or televises a child under 18 years of age engaged in, the following actual or simulated conduct:

(1) sexual penetration;

(2) the lewd touching of another person's genitals, anus, or breast;

(3) the lewd touching by another person of the child's genitals, anus, or breast;

(4) masturbation;

(5) bestiality;

(6) the lewd exhibition of the child's genitals; or

(7) sexual masochism or sadism.

Braun was indicted on six counts of soliciting the violation of this statute. According to the indictment, the State's theory of prosecution was that Braun,

> with the intent of producing a live performance [or a] photograph ... visually depict[ing] ... the lewd exhibition of the child[ren]'s genitals, did ... solicit ... child[ren] under 18 years of age to engage in such actual or simulated conduct.

That is, the State argued that Braun had solicited the violation of AS 11.41.455(a) in two different ways. First, Braun asked four of the girls to lewdly exhibit their genitals so that he could view them. The State asserted that, had the girls done what Braun asked, this would have constituted a "live performance". Second, Braun asked two of the girls to lewdly exhibit their genitals so that he could take photographs of them.

With respect to each of the six counts of solicitation, the jury received the same instruction on the substantive crime of unlawful exploitation of a minor:

> In order to establish the crime of unlawful exploitation of a minor, it is necessary for the State to prove beyond a reasonable doubt the following:
>
> . . . .
>
> that Harold "Frenchy" Braun knowingly induced or employed [the named victim], a child under 18 years of age, to engage in the lewd exhibition of the child's genitals; and ...
>
> that the defendant intended to produce a live performance, film, photograph, negative, slide, book, newspaper, magazine, or other printed material which depicted that conduct.

The jury was then instructed regarding the conduct that constituted solicitation:

> In order to establish the crime of solicitation ..., it is necessary for the State to prove:
>
> . . . .
>
> that Harold "Frenchy" Braun intended to cause another to engage in conduct constituting the unlawful exploitation of [a] minor; [and]

that the defendant asked, induced, or commanded the other person to commit unlawful exploitation of a minor.

### A. The Four Counts Alleging Intent to Produce a "Live Performance"

█ In Counts VII through X of Braun's indictment, the State alleged that when Braun asked the children to let him look at their genitals, Braun acted "with the intent of producing a live performance" of the lewd exhibition of a child's genitals. During final argument, the prosecutor reiterated this theory. The prosecutor told the jury (without objection) that when Braun asked the children to let him see their genitals, he was "soliciting the children for what the law calls a 'live performance'—which is to look at their genitals, to view [them]". This was the sole allegation against Braun with respect to four of the six solicitation counts (Counts VII through X). The two remaining solicitation counts (Counts V and VI) were supported by testimony that Braun had asked the two children to disrobe so that he could photograph them.

Braun attacks his convictions on Counts VII through X by arguing that the jury was misinformed on what constitutes a "live performance". Braun argues that a "live performance" requires an audience other than the person who requests the child to exhibit his or her genitals. Braun therefore contends that, because he was to be the sole onlooker when the children disrobed, he can not have intended to produce a "live performance".

This argument was not preserved in the trial court. Nevertheless, because Braun's contention goes to the definition of the crime, we will address it.

In *Harris v. State*, 790 P.2d 1379, 1384 (Alaska App.1990), this court indicated that AS 11.41.455(a) forbids a person from taking lewd photographs of a child even when the photographs are for the private use of the photographer. *See* ch. 57, § 1, SLA 1983, which amended the statute by deleting the phrase "for any commercial purpose". The New York statutes which formed the basis of AS 11.41.455 have been interpreted in the same way.[3] Because our statute no longer

---

**3.** Alaska Statute 11.41.455 is based on Tentative    Draft 11.51.135. This provision was not taken

requires that the defendant act for a commercial purpose, the State argues that a "live performance" can include a private, one-person exhibition.

There is no definition of "live performance" in AS 11.41. However, the corresponding New York statute contains a definition of "performance" that supports Braun's interpretation; it indicates that a live performance requires an audience.[4] Moreover, the State's interpretation of the statute would lead to anomalous results. The unlawful exploitation of a minor statute applies to all children under the age of 18. Under the State's interpretation of "live performance", an adult who asked a 14–year–old child to disrobe so that the adult could view the child's genitals would be guilty of a class B felony, even though the adult's act of actually touching the child's genitals would be only a class C felony (third-degree sexual abuse of a minor under AS 11.41.438). Even more paradoxically, an adult who asked a 17–year–old child to disrobe preparatory to an act of consensual sexual intercourse would commit a class B felony, even though the adult's ensuing act of sexual intercourse with this child would be no crime at all.[5,6]

We therefore reject the State's broad reading of the term "live performance". We agree with the State that AS 11.41.455 covers private, non-commercial live performances. Nevertheless, we agree with Braun that "live performance" does not include the situation in which a single adult requests a child to display his or her genitals to that adult in private.

Because the State's theory of prosecution on Counts VII through X was based wholly on the assertion that Braun had asked the four victims to display their genitals to him,

and because the jury was erroneously told that Braun's contemplated act of viewing these children's genitals would constitute a "live performance", we must reverse Braun's convictions on these four counts.

■ Braun argues that, for this same reason, we must reverse his convictions on Counts V and VI—the counts that charged Braun with asking children to allow him to photograph their genitals. Braun argues that the distinction between "viewing" and "photographing" the children's genitals was "blurred in the instructions and during closing arguments", and that the jury might have relied on a "live performance" theory when they convicted Braun of Counts V and VI. We have reviewed the record, and we disagree with this assertion. The prosecutor repeatedly emphasized the difference between Counts V and VI (which charged that Braun had tried to induce the children to let him photograph their genitals) and Counts VII through X (which charged that Braun had tried to induce the children to let him view their genitals). Even though the jury instructions on these six counts were virtually identical, the prosecution's differing theories were plainly explained to the jury. *See Norris v. State,* 857 P.2d 349, 355 (Alaska App.1993); *O'Brannon v. State,* 812 P.2d 222, 229 (Alaska App.1991) (the parties' arguments can cure defects or omissions in jury instructions).

### B. *The Two Counts Alleging Intent to Photograph*

■ Braun asserts that there is a separate legal flaw in the two remaining counts of solicitation (the counts alleging Braun's intention to photograph two of the girls).

---

from pre-existing law but was authored by the Criminal Code Revision Subcommission. In its commentary to this draft provision, the Subcommission indicated that its draft statute was based on §§ 263.00—263.15 of the New York Penal Law. This New York law has repeatedly been interpreted to prohibit all pornographic photography of children, even when the photographs are for the private use of the photographer. *See People v. Gaito,* 199 A.D.2d 615, 604 N.Y.S.2d 992 (1993); *Matter of Glenn G.,* 154 Misc.2d 677, 587 N.Y.S.2d 464, 465 (N.Y.Fam.Ct.1992); *People v. Duboy,* 150 A.D.2d 882, 540 N.Y.S.2d 905, 906 (1989).

4. New York Penal Law § 263.00[4] states:

"Performance" means any play, motion picture, photograph or dance. Performance also means any other visual representation exhibited before an audience.

5. With the exception of sexual activity between a 16– or 17–year–old child and an adult who has authority over that child, Alaska's age of consent is 16. *See* AS 11.41.434 *et seq.*

6. We reject the notion that this act of consensual intercourse could be deemed a "live performance" under AS 11.41.455.

Braun's challenge to these two counts centers upon the legal definition of "solicitation".

For purposes of this argument, Braun concedes that the State proved that Braun asked the two girls named in Counts V and VI to take off their clothes and let him photograph them. He contends, nevertheless, that this conduct did not constitute a "solicitation" of the crime of unlawful exploitation of a minor.

The criminal conduct Braun was alleged to have solicited was "induc[ing] ... a child under 18 years of age to engage in ... the lewd exhibition of the child's genitals" for the purpose of "producing a ... photograph". *See* AS 11.41.455(a). Under this definition, Braun would have committed the completed crime of unlawful exploitation of a minor had he successfully induced the two girls to pose unclothed for his contemplated photographs (even if the photographs were never actually taken). Because the girls did not agree to Braun's request, Braun was charged with soliciting the crime of unlawful exploitation of a minor. Under AS 11.31.110(a), Braun would be guilty of solicitation "if, [acting] with intent to cause [the girls] to engage in conduct constituting a crime, [Braun] solicit[ed] the [girls] to engage in that conduct."

Braun does not contest that what he asked the girls to do would have been a "lewd exhibition of the child[ren]'s genitals" within the meaning of AS 11.41.455(a)(6).[7] However, Braun argues that he did not "solicit" the crime of unlawful exploitation of a minor when he asked the girls to exhibit themselves. Braun argues that, when the solicitation statute speaks of "solicit[ing] [an]other to engage in" "conduct constituting a crime", the statute means that the crime of solicitation is committed only when the defendant asks, encourages, or commands another person to engage in conduct that would subject that other person to criminal liability.

Braun points out that, under AS 11.41.455(a), the offense of unlawful exploitation of a minor is committed by the people who exploit minors, not by the minors who are exploited. Even when a minor willingly agrees to be photographed in a lewd pose, the exploitation of a minor statute does not

punish the minor, but rather the person who induced the minor to pose for the photograph. See also AS 11.16.120(b), which declares that, unless a criminal statute provides otherwise, the victim of an offense is not to be held legally accountable (under a complicity theory) for the conduct of the person committing the offense.

Thus, Braun did not ask the children to commit a crime (in the sense of subjecting themselves to criminal liability) when he asked the children to let him photograph them. Even if the offense had proceeded to completion, the children would have done nothing that subjected them to criminal liability. This being so, Braun concludes that he can not be guilty of solicitation.

Braun's argument falters on the language of the solicitation statute itself. AS 11.31.110(a) does not *require* proof that the defendant solicited another person "to commit a crime". Rather, the statute declares that a person commits solicitation when he or she solicits another person "to engage in *conduct constituting a crime* ". (Emphasis added.) From examining AS 11.16 and AS 11.31, it appears that the legislature deliberately employed this language to emphasize that the person whom the defendant solicits need not be criminally liable for the conduct he or she is asked to perform. A defendant can, under certain circumstances, be held criminally liable for the acts of another person even when that other person faces no criminal liability for the same conduct.

The basic rule of vicarious liability is codified in AS 11.16.110. Subsection (3) of that statute declares that a defendant is legally accountable "for the *conduct of another constituting an offense* " if the defendant, "acting with the [required] culpable mental state[,] ... causes an innocent person or a person who lacks criminal responsibility to engage in the proscribed conduct". (Emphasis added.) This rule is accentuated in AS 11.16.120(a)(2)(C), which states that a defendant remains criminally liable for another person's conduct despite the fact that "the other person is not guilty of the offense".

7. We therefore need not consider whether, or under what circumstances, the girls' act of disrobing and displaying their bodies to Braun

would have constituted a "lewd exhibition of the child[ren]'s genitals" for purposes of AS 11.41.455(a)(6).

The solicitation statute itself contains a parallel provision. Under AS 11.31.110(b)(1)(B), it is no defense to solicitation "that [the] person whom the defendant solicits could not be guilty of the crime that is the object of the solicitation". This statutory provision appears to foreclose Braun's argument that he should escape liability because the children he solicited could not themselves be guilty of the intended crime.

There is, however, another problem with the solicitation charges in Braun's case. This problem stems, not from the definition of solicitation, but from the definition of unlawful exploitation of a minor.

As pointed out above, the crime of solicitation occurs when the defendant solicits another person to engage in conduct constituting a crime. For purposes of Braun's case, the conduct prohibited by the unlawful exploitation of a minor statute (the *actus reus* of the crime) is the act of "induc[ing]" a child under the age of 18 to engage in one of the listed sexual activities. Braun would have committed the crime of solicitation if he had asked someone else to engage in this prohibited conduct—if Braun had asked someone else to *induce* an underage child to engage in one of the listed sexual activities. But the State's theory of prosecution was that Braun approached the girls himself, without any intermediary. Because Braun did not ask anyone else to engage in the conduct prohibited by the unlawful exploitation of a minor statute—the conduct of "induc[ing] ... a child under 18 years of age" to engage in one of the sexual activities listed in the statute— Braun did not commit the crime of solicitation.

We are mindful that in *Sullivan v. State*, 766 P.2d 51, 56 n. 5 (Alaska App.1988), where the State's evidence showed that the defendant had sent notes to an underage girl suggesting that they engage in sexual activity, this court offered the opinion that the defendant might be convicted of solicitation. But the target offense in *Sullivan* was second-degree sexual abuse of a minor as defined in AS 11.41.436(a)(2). The *actus reus* of this crime is engaging in sexual contact with a child under the age of 13. "Sexual contact" is defined in AS 11.81.900(b)(53) as either the adult's act of sexually touching the minor or the minor's act of sexually touching the adult at the adult's behest. It could therefore be argued that Sullivan's letters to the girl were evidence that he solicited the girl to engage in the conduct (sexual contact) prohibited by the second-degree sexual abuse statute. In Braun's case, however, the conduct prohibited by the unlawful exploitation of a minor statute is not the minor's act of engaging in one of the listed sexual activities, but rather the act of *inducing* a minor to engage in one of these activities.

Braun did not ask any other person to induce a minor to engage in sexual activity. The State's evidence showed that Braun communicated directly with the girls; the State alleged that Braun himself tried to induce underage children to engage in one of the prohibited sexual activities. If Braun had succeeded in inducing the children to engage in a lewd exhibition of their genitals so that he could photograph them, he would have committed the completed crime of sexual exploitation of a minor. Because Braun was unsuccessful in his attempt to induce the children to disrobe, his conduct fell short of the completed crime. If Braun's conduct amounted to any crime, that crime was attempted unlawful exploitation of a minor.

Even though the State's evidence conceivably establishes the crime of attempted unlawful exploitation of a minor, the jury· at Braun's trial was not asked to consider the elements of attempt. Because Braun's solicitation convictions are premised on a mistaken legal theory, these convictions must be reversed. *See Dawson v. State*, 894 P.2d 672, 679 (Alaska App.1995).

*Conclusion*

For the reasons explained above, we affirm Braun's convictions for sexual abuse of a minor and attempted sexual abuse of a minor, but we reverse his convictions for soliciting the unlawful exploitation of a minor.

Because we are reversing several of Braun's convictions, Braun will have to be resentenced. We therefore do not reach Braun's contention that his composite sentence is excessive.

The judgement of the superior court is AFFIRMED IN PART and REVERSED IN PART. We return this case to the superior court for amendment of the judgement and re-sentencing.