NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| CHRISTOPHER S. HESS, | Court of Appeals No. A-11425 |
| Appellant, | Trial Court No. 3AN-11-10574 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2513 — September 2, 2016 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Dan S. Bair, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Terisia K. Chleborad, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge SUDDOCK.

---

[*]   Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

A jury convicted Christopher S. Hess of second- and third-degree assault for strangling his mother, Patricia Hess. On appeal, he challenges aspects of the prosecutor's final argument. We agree that some of the prosecutor's statements were inflammatory and thus improper. But because Hess did not object to these remarks, he must establish that they undermined the fundamental fairness of his trial. We conclude that they did not.

*Facts and proceedings*

Responding to a report of an assault in progress, Anchorage police went to the apartment where Patricia Hess lived with her son, Christopher Hess. They found Patricia outside the apartment, apparently quite shaken. She coughed repeatedly, said she had difficulty swallowing, complained of throat pain, had bruises on her neck, and had urinated on herself. Patricia reported that her adult son became angry at her, shoved her to the floor, and strangled her.

The police spoke with Hess inside the apartment. He denied strangling his mother. He said that he and his mother had been drinking, and he claimed that she was "crazy." The police found Patricia's dentures, eyeglasses, and a kitchen knife on the floor of the apartment.

The State charged Hess with second-degree assault for strangling his mother and with third-degree assault for recklessly placing her in fear by use of a dangerous weapon.

At trial Patricia equivocated, saying that she had trouble remembering the incident. She testified that she and Hess had been drinking that night and that they became "really, really drunk." She disavowed any memory of her prior claim that Hess had strangled her until she almost passed out. But she related that the following morning her throat hurt at a level eight on a scale of one to ten.

Several of Patricia's relatives testified that she had a reputation for untruthfulness and that she was particularly untruthful when off of her medications and drinking.

Hess testified that his mother always had a friend or relative living with her to help her; he had been staying with her for approximately a month before the charged incident. He said that he and his mother were drinking on the evening in question and that the last thing he remembered was watching television. He declared that he would never strangle his mother.

Hess testified that his mother is a manipulative, attention-seeking exaggerator. He claimed that while he was passed out, she concocted a plan to injure herself, and then framed him by feigning distress to a neighbor and calling 911.

The jury convicted Hess of both second-degree and third-degree assault. The superior court merged the two convictions and sentenced Hess to 6 years with 2 years suspended. This appeal followed.

*Why the prosecutor's argument addressing how the jury should view a recanting victim was not obvious error*

Hess challenges the prosecutor's statements urging the jury to convict Hess to "protect" the victim and to show the victim that she was "worthy of protection." We agree with Hess that, as a general matter, such comments are improper. A prosecutor should not argue for a conviction based on alleged future harms that might occur if the defendant is not convicted, nor should a prosecutor urge a jury to convict in order to "send a message."

But it is not clear that the prosecutor was making this type of improper argument here. The prosecutor made these statements in the context of discussing Ms. Hess's obvious reluctance to incriminate her son on the witness stand:

> Maybe Ms. Hess doesn't want the State to prosecute her son. Maybe she doesn't, but it doesn't mean that she does not deserve protection. Even if her own family doesn't value her, we as a community value her, and we as a community must protect her.

The prosecutor then continued:

> So if you believe the State has proved its case beyond a reasonable doubt, don't be tempted to say, "What does it matter?" ... What this is about is proof, and ladies and gentlemen I will reiterate you have the photographs. You have her statements from that night.

Thus, contrary to Hess's argument on appeal, it does not appear that the prosecutor was urging the jury to convict Hess because of the need to protect the victim, or to send a message that she was worthy of being protected. Rather, the prosecutor was concerned that the jury would find that the State *had* proved its case beyond a reasonable doubt and would nevertheless decide *not* to convict because the victim herself did not seem to want her son convicted. In context, therefore, the prosecutor's statements were not improper, or at least not so obviously improper that the trial court should have *sua sponte* intervened despite the absence of any defense objection.

*Why we conclude that several of the prosecutor's closing statements were improper but that Hess nonetheless received a fair trial*

Hess argues that the prosecutor made several other improper statements during his closing argument. Hess concedes that he did not object to these statements. He must therefore show that the judge committed plain error by not admonishing the

prosecutor, instructing the jury to disregard the prosecutor's remarks, or declaring a mistrial, even though Hess did not request this relief.[1]

When a defendant argues that a prosecutor's closing argument amounted to prosecutorial misconduct, we consider "whether the prosecutor's statements, if in error, constituted such egregious conduct as to undermine the fundamental fairness of the trial."[2] In this analysis, we view the challenged statements in the context of the record as a whole.[3]

At trial, the defense had elicited testimony from the victim and others about the victim's mental health issues and her diminished ability to accurately perceive events when she was off of her medication. The defense also introduced reputation evidence through various family members who testified that the victim had a reputation for being untruthful and manipulative.

The prosecutor responded during his closing argument, asserting that the defense attorney was "vilifying" the victim, a tactic he claimed is frequently employed by defense attorneys in domestic violence cases. He stated:

> Now, I warned you during my opening [at the beginning of trial] that the defense was going to go out of their way to make it look like the victim was crazy, to vilify the victim. And we talked about this in voir dire. In domestic violence crimes[,] that's too often what happens.

We agree with Hess that the prosecutor improperly denigrated the defense lawyer's trial strategy by asserting that defense attorneys in general commonly engage

---

[1] *Rogers v. State*, 280 P.3d 582, 589 (Alaska App. 2012); *see Cook v. State*, 36 P.3d 710, 729 (Alaska App. 2001).

[2] *Rogers*, 280 P.3d at 589.

[3] *Id.*

in false "vilification" of victims of domestic violence. The prosecutor was implicitly asking the jurors to reject Hess's defense, not because the defense lacked evidentiary support, but instead because of the prosecutor's purported experience handling similar cases, and his unsupported accusation that defense attorneys commonly resort to underhanded or misleading tactics.

As we stated in *Patterson v. State*, a prosecutor's argument must be based on the evidence presented at trial and the inferences that might fairly be drawn from that evidence.[4] It is improper for a prosecutor to "mak[e] appeals calculated to inflame [the] passions and prejudices of the jury," or to "advanc[e] arguments based on ... issues other than the guilt or innocence of the accused."[5]

In her summation to the jury, Hess's attorney responded to the prosecutor's remarks by arguing that the defense was not "vilifying" Hess's mother, but was only pointing out the reasons to be skeptical of her initial report of assault and the need to hold the State to its high burden of proof.

After the defense attorney concluded her summation, the prosecutor returned to the issue of "vilification":

> Now, [the defense attorney] says [that] she is not vilifying the victim. ... Maybe that's true[,] and maybe that's not. ... [But if] she's not vilifying the victim, [then] what she is suggesting is that someone who [suffers from post-traumatic stress disorder from a prior unrelated assault and rape,] and [who] is on medication[,] can no longer ever be a victim. That's what [the defense attorney] is suggesting to you, and that is what is offensive.

---

[4]    *Patterson v. State*, 747 P.2d 535, 538 (Alaska App. 1987).

[5]    *Id.*

We agree with Hess that this argument was improper. The prosecutor grossly distorted the defense attorney's argument, and he again urged the jury to decide the case on issues other than whether the evidence established Hess's guilt — this time, by implicitly asking the jury to convict Hess in the name of defending all people who suffer from post-traumatic stress disorder.

But the challenged portions of the prosecutor's closing argument are only a small part of what was otherwise an appropriate final argument focused on the evidence in this case and the State's burden of proof beyond a reasonable doubt. Viewing these challenged statements in the context of the record as a whole, we find that the moments where the prosecutor argued intemperately were not sufficiently central to the trial so as to rob it of its fundamental fairness, as is required for a finding of plain error.[6]

*The judge's role during final argument*

In a case involving allegations of prosecutorial misconduct during final argument, the United States Supreme Court stated that federal trial judges have a responsibility to manage the propriety of final argument, even in the absence of objection by a party:

> We emphasize that the trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; "the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct." The judge "must meet situations as they arise and [be able] to cope with ... the contingencies inherent in the adversary process." Of course, "hard blows" cannot be avoided in criminal trials; both the prosecutor and defense

---

[6] *See Rogers*, 280 P.3d at 589.

counsel must be kept within appropriate bounds. ... The situation brought before the Court of Appeals was but one example of an all too common occurrence in criminal trials — the defense counsel argues improperly, provoking the prosecutor to respond in kind, and the trial judge takes no corrective action.[7]

In like manner, the Ninth Circuit Court of Appeals has stated that trial judges must remain acutely alert during final argument, intervening without prompting when counsel engage in improper argument:

Trial court judges are not mere referees. They play an active role, keeping the trial running efficiently with a minimum of error. Their control over closing argument is broad.

A trial judge should be alert to deviations from proper argument. Because such comments have the clear potential for affecting adversely the defendant's right to a fair trial, the judge should take prompt corrective action as appropriate in each case.[8]

We have previously expressed a similar admonition for vigilance on the part of judges.[9]

We take this opportunity to remind judges of their duty to guard against improper closing argument, even in the absence of objection.[10] While we recognize that some trial judges prefer a hands-off approach to final argument absent objection by a

---

[7] *United States v. Young*, 470 U.S. 1, 10-11 (1985) (internal citations omitted).

[8] *United States v. Roberts*, 618 F.2d 530, 534 (9th Cir. 1980) (internal citations omitted).

[9] *See Potts v. State*, 712 P.2d 385, 394 (Alaska App. 1985), *superseded by statute on other grounds as recognized in Braun v. State*, 911 P.2d 1075, 1078 (Alaska App. 1996).

[10] *See Adams v. State*, 261 P.3d 758, 772 (Alaska 2011).

party, such judicial reticence is actually contrary to a judge's duty to supervise final argument.

And this judicial reticence only perpetuates recurrent improper argument. Trials are hard-fought, emotions run high, and one side might feel provoked by the other to exceed the bounds of proper argument. But when an argument diverges from consideration of the evidence into the realm of emotion or otherwise improper argument, the judge has a duty to intervene.

Here the improper nature of the prosecutor's arguments should have been apparent to the superior court. The judge should have interrupted the argument, conducted a bench conference, and considered a curative instruction to the jury.

*Conclusion*

We AFFIRM the judgment of the superior court.