8 P.3d 391

**STATE of Arizona, Appellee/Cross–Appellant,**

v.

**David Alan CARLISLE, Appellant/Cross–Appellee.**

No. 1 CA–CR 99–0329.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 29, 2000.

Janet Napolitano, Arizona Attorney General, By Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, David J. Maletta, Assistant Attorney General, and Richard M. Romley, Maricopa County Attorney, By Gerald R. Grant, Deputy County Attorney, Phoenix, for Appellee/Cross–Appellant.

Dean W. Trebesch, Maricopa County Public Defender By Paul J. Prato, Deputy Public Defender, Phoenix, for Appellant/Cross–Appellee.

## OPINION

RYAN, Judge.

¶ 1 David Alan Carlisle appeals from his conviction on one count of attempted sexual conduct with a minor under the age of fifteen, a class three felony, arguing that there was insufficient evidence presented at trial to support the conviction. The State cross-appeals from the trial court's ruling that no dangerous crime against children could have been committed because no actual child victim was involved. We conclude that sufficient evidence exists to support Carlisle's conviction but that the trial court erred in ruling that Carlisle's crime was not a dangerous crime against children. Therefore, we affirm the conviction but remand for resentencing.

### Background

¶ 2 In July 1995, a Phoenix television reporter began an investigation into people who use the Internet to seduce minors. The reporter set up an account with an internet service provider and created a profile for a fictitious fourteen-year-old boy named "Brad." The reporter used the account and profile to enter adult internet chat rooms using the pseudonym "PHX14" and then waited for people to contact him. Realizing the possibility of a face-to-face meeting, the reporter also hired an eighteen-year-old actor to play the part of "Brad."

¶ 3 One of the people who contacted "Brad" in a chat room was Carlisle. During their first conversation, Carlisle asked "Brad" if he was really fourteen. When "Brad" answered that he was, Carlisle said that he was twenty-two, but that he liked "younger guys." He also asked "Brad" where he lived and what he looked like. Carlisle then turned the conversation to more sexually explicit topics, asking "Brad" about past experiences and discussing both masturbation and oral sex. Several times during the conversation, "Brad" told Carlisle that he was only fourteen and, after the third time, Carlisle responded, "you keep saying that."

¶ 4 Carlisle asked if "Brad" wanted to meet him in person and offered to perform oral sex on him. When "Brad" again said that he was fourteen and asked if Carlisle cared, Carlisle answered, "It's a BIG risk for me, but I'm trusting that you we'll [sic ] keep this between us." Carlisle repeatedly asked "Brad" to meet him right then for a sexual encounter. "Brad" told Carlisle that he was unable to meet him right away—the reporter needed time to contact the actor—but agreed to meet him at a park at 6 p.m. that evening.

¶ 5 Carlisle did not show up at the scheduled time. Later that night, the reporter sent Carlisle electronic mail in "Brad's" name asking him why he did not show. The next day, the two met again in the chat room and Carlisle explained that he could not make their meeting because of a conflict that he could not avoid, "at·least not by saying I was going to meet a 14 year old [sic ] at a park." Carlisle said he still wanted to meet "Brad," and they arranged another meeting for later that afternoon at a different park.

¶ 6 The reporter, the actor, and a camera crew set up at the park before Carlisle arrived. The actor sat at a picnic table with the reporter and camera crew hidden from view. Carlisle arrived, approached the actor, and their conversation was recorded by a

hidden microphone. The conversation covered a number of topics including roller skating, naked wrestling, masturbation, penis size, and Carlisle's sexual encounters with other minors. When the actor asked if Carlisle meant what he had said earlier in the chat room about performing oral sex on him, Carlisle answered, "Ya, if you want." The actor then asked what they would do, and Carlisle explained that they could engage·in mutual masturbation or oral sex. Carlisle went on to say that they could drive around and look for a secluded place or go to his place.

¶ 7 A short time later the reporter confronted Carlisle and asked if he was trying to engage in sexual activity with a fourteen-year-old boy. Carlisle denied any such intentions and drove away from the park after saying that he did not want to make any further comments to the reporter.

¶ 8 Carlisle was indicted on two counts of attempted sexual conduct with a minor under the age of fifteen, each a class three felony and dangerous crime against children in the second degree. Before trial, Carlisle filed a motion to dismiss the charges and the allegations that the offenses constituted dangerous crimes against children under Arizona Revised Statutes Annotated ("A.R.S.") section 13–604.01 (Supp.1999).[1] The trial court denied Carlisle's motions to dismiss the charges, but granted his motion to dismiss the dangerous crime against children allegation. Carlisle waived his right to a jury and, after a bench trial, the court granted Carlisle's motion for judgment of acquittal on count one, but found him guilty of count two involving the allegation that he offered to perform oral sex on a minor under the age of fifteen. The trial court suspended imposition of sentence and placed Carlisle on lifetime probation.

¶ 9 Carlisle appealed, arguing that the evidence was insufficient to support a finding beyond a reasonable doubt that he attempted to commit sexual conduct with a minor under the age of fifteen. The State cross-appealed,

challenging the trial court's dismissal of the dangerous crimes against children allegation.

## Discussion

### A. Sufficiency Of The Evidence.

¶ 10 Carlisle contends that the trial court erred in denying his motion for judgment of acquittal on count two. He argues that there was a complete absence of substantial evidence that he took "any step" planned to culminate in the commission of the offense of sexual conduct with a minor under the age of fifteen. *Cf.* A.R.S. § 13–1001(A)(2) (1989).

¶ 11 A conviction must be based on "substantial evidence." Ariz. R.Crim. P. 20(a); *see State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)). On appeal, "we must view the evidence in the light most favorable to sustaining the verdict, and we must resolve all reasonable inferences against defendant." *State v. Atwood*, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992). To set aside a conviction because of insufficient evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the [trier-of-fact]." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987); *State v. Alvarado*, 178 Ariz. 539, 541, 875 P.2d 198, 200 (App.1994). We do not consider if we would reach the same conclusion as the trier-of-fact, but only if "there is a complete absence of probative facts to support its conclusion." *State v. Mauro*, 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988).

¶ 12 The crime of sexual conduct with a minor under the age of fifteen involves two elements: (1) the defendant intentionally or knowingly engaged in sexual intercourse or

---

1. The version of A.R.S. section 13–604.01 in effect at the time of Carlisle's crimes has been amended and the subsections redesignated. *See* 1997 Ariz. Sess. Laws, ch. 179, § 1; 1998 Ariz. Sess. Laws, ch. 281, § 1; 1999 Ariz. Sess. Laws, ch. 261, § 6. Because the relevant language has not materially changed, we refer to the current version of the statute in this opinion.

oral sexual contact with another person; and (2) the other person has not reached his or her fifteenth birthday. *See* A.R.S. § 13–1405 (Supp.1999).[2] An attempt to commit a specific crime occurs when a person, "acting with the kind of culpability otherwise required for commission of an offense, ... intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of [that] offense." A.R.S. § 13–1001(A).

¶ 13 Carlisle maintains that his conversations with "Brad," both in the chat room and at the park, were merely general sexual banter and not a step toward actually engaging in sexual conduct with him. According to Carlisle, all of his conversations with "Brad" were phrased hypothetically and he never crossed the line from mere conversation into action.

¶ 14 We rejected a similar argument in *State v. Fristoe*, 135 Ariz. 25, 658 P.2d 825 (App.1982). There, the defendant drove up to minor girls and offered them money if they would permit him to perform oral sex on them. *See id.* at 27, 658 P.2d at 827. When he was turned down, he drove away. *See id.* The defendant argued that he was improperly charged for attempting to engage in oral sexual contact with a minor under the age of fifteen because he never did anything other than speak to the girls and, therefore, did not engage in any conduct sufficient to support an attempt conviction. *See id.* at 29, 658 P.2d at 829. We upheld the convictions, rejecting the idea that words cannot constitute a step under the attempt statute. *See id.* at 30, 658 P.2d at 830. "[W]ords may be acts sufficient to sustain a conviction for an attempt when viewed in the light of the circumstances in which they were uttered." *Id.* (quoting *State v. Dale*, 121 Ariz. 433, 435, 590 P.2d 1379, 1381 (1979)).

¶ 15 As in *Fristoe*, the circumstances here show that Carlisle was not merely making comments or statements with no intent to carry out the sexual acts he suggested. Car-

lisle not only propositioned "Brad" in the chat room, he arranged a meeting and came to the park as agreed where he again offered to engage in sexual conduct with "Brad." "Brad" told Carlisle several times that he was only fourteen years old, and Carlisle acknowledged that he was offering to do something that could get him into trouble. Sufficient evidence supports Carlisle's conviction for attempted sexual conduct with a minor.

### B. Attempt As A Dangerous Crime Against Children When No Child Is Involved.

¶ 16 In its cross-appeal, the State contends that the trial court. erred in finding that Carlisle's crime was not a dangerous crime against children under A.R.S. section 13–604.01. This statute increases the penalties for specified offenses when a defendant's conduct is "focused on, directed against, aimed at, or target[s] a victim under the age of fifteen." *State v. Williams*, 175 Ariz. 98, 103, 854 P.2d 131, 136 (1993). In *Williams*, our supreme court held that drunk driving, which involves a reckless, unfocused state of mind, would not qualify as a dangerous crime against children even when a minor under the age of fifteen is injured by the criminal conduct. *See id.* at 104, 854 P.2d at 137. But, unlike *Williams*, Carlisle was found guilty of an offense that involved a focused state of mind, one which specifically targeted someone he believed to be under the age of fifteen as the intended victim of the proscribed act.

¶ 17 The absence of an actual victim under the age of fifteen does not preclude an attempted crime from being a dangerous crime against children. The legislature specifically classified preparatory offenses such as attempt, other than attempted first degree murder, as dangerous crimes against children in the second degree provided the completed offense would have been a dangerous crime against children in the first degree. *See* A.R.S. § 13–604.01(L)(1). That a dangerous crime

---

**2.** The relevant language of A.R.S section 13–1405 in effect when Carlisle committed his crime was

not materially different.

against children could not have been completed because no child under the age of fifteen was actually involved is of no consequence; it is well-settled in Arizona that factual impossibility is not a defense to attempt. *See State v. McElroy*, 128 Ariz. 315, 317, 625 P.2d 904, 906 (1981). All that is required to commit an attempted dangerous crime against children is for the perpetrator to believe that the intended victim is a minor under fifteen years of age, and then to take any step in a course of conduct planned to culminate in one of the crimes enumerated in the statute. *See* A.R.S. §§ 13–1001(A)(2); 13–604.01(L)(1).

¶ 18 In this case, Carlisle attempted a dangerous crime against children. In finding him guilty of attempted sexual conduct with a minor under the age of fifteen, the trial court necessarily concluded that Carlisle believed that his intended victim was under the age of fifteen. *See* A.R.S. §§ 13–1001(A)(2), 13–1405(A). Acting under that belief, Carlisle intentionally took steps to lure his intended victim into prohibited sexual conduct. In other words, Carlisle specifically targeted a victim he believed to be under the age of fifteen and then attempted a crime. This is precisely the type of conduct that the legislature addressed in A.R.S. section 13–604.01. *See Williams*, 175 Ariz. at 102, 854 P.2d at 135 ("The legislative history indicates quite clearly that the enactment of § 13–604.01 was calculated to reach criminals who prey specifically upon children."). Consequently, the trial court erred in ruling that Carlisle's attempted crime was not a dangerous crime against children.

¶ 19 Because the trial court erred in ruling that this offense was not a dangerous crime against children, it also erred during sentencing when it advised Carlisle of the consequences of violating probation or committing a subsequent, similar offense. The judge told Carlisle that he could receive a presumptive prison term of three and one-half years for violating probation for this offense, and up to eight and three-quarters years in prison for "any repeat performances or any similar criminal conduct." However, the presumptive prison term for a dangerous crime against children in the second degree is ten years, which the court may increase or decrease by up to five years depending on aggravating and mitigating factors. *See* A.R.S. §§ 13–604.01(I), 13–702(B)–(D) (1999). In addition, if Carlisle commits a subsequent dangerous crime against children in the second degree, he will be ineligible for probation and could receive as much as fifteen years in prison. *See* A.R.S. § 13–604.01(I), (L)(2). Therefore, because these consequences are more severe than those described by the trial court, we vacate Carlisle's sentence and remand this matter for resentencing.[3]

### CONCLUSION

¶ 20 Substantial evidence supports Carlisle's conviction for attempted sexual conduct with a minor under the age of fifteen. Accordingly, we affirm the conviction. However, we conclude that Carlisle's offense was a dangerous crime against children in the second degree, and so we remand this matter for resentencing in accordance with this opinion.

CONCURRING: CECIL B. PATTERSON, Jr., Presiding Judge, and E.G. NOYES, Jr., Judge.

---

**3.** Notwithstanding our determination that Carlisle committed a dangerous crime against children in the second degree and must be resentenced, we note that he remains eligible for probation for not less than five years and up to life. *See* A.R.S. §§ 13–604.01(I), 13–902(A),(E) (1999).