389 P.3d 88

The STATE of Arizona, Appellee,

v.

Clayton Paul FARNSWORTH, Appellant.

No. 2 CA-CR 2015-0382

Court of Appeals of Arizona,
Division 2.

Filed January 31, 2017

Mark Brnovich, Arizona Attorney General, Joseph T. Maziarz, Section Chief Counsel, Phoenix, By Kathryn A. Damstra, Assistant Attorney General, Tucson, Counsel for Appellee

Steven R. Sonenberg, Pima County Public Defender, By Michael J. Miller and Erin K. Sutherland, Assistant Public, Defenders, Tucson, Counsel for Appellant

Judge Miller authored the opinion of the Court, in which Presiding Judge Vásquez concurred and Chief Judge Eckerstrom dissented in part and concurred in part.

## OPINION

MILLER, Judge:

¶ 1 After a jury trial, Clayton Farnsworth was convicted of luring a minor for sexual exploitation based on electronic communications with a detective posing as a thirteen-year-old girl, and second-degree attempted sexual conduct when he made arrangements to meet with the "girl" at a park to engage in oral sex. He was also convicted of twenty-two counts of sexual exploitation of a minor under fifteen relating to child pornography found on his computer. He was sentenced to consecutive seventeen-year terms for the exploitation offenses, to be served consecutively to concurrent terms on the other two offenses, totaling 384 years' imprisonment.

¶ 2 On appeal, Farnsworth argues the state improperly shifted the burden of proof by arguing in closing that he could have subpoenaed additional witnesses to support his factual contentions about possible third-party access to his computer. He also argues he should not have been sentenced under the dangerous crimes against children (DCAC) sentencing statute, A.R.S. § 13–705, for the attempted sexual conduct charge. For the following reasons, we affirm.

## Factual and Procedural Background

¶ 3 We view the evidence in the light most favorable to upholding Farnsworth's convictions. *See State v. Tamplin*, 195 Ariz. 246, ¶ 2, 986 P.2d 914, 914 (App. 1999). On February 5, 2015, a Tucson Police detective specializing in internet crimes against children was browsing a public bulletin board on the "Whisper" smart phone application when he noticed a posted image with the words, "Why can['t] underaged girls be legal? They are so hot and sexy." Posing as a thirteen-year-old girl named "Becky," the detective sent a private message to the person who posted the image—ultimately identified as Farnsworth—saying, "Hi there! Might not be legal but we can talk!" Farnsworth responded, "[W]hat's [yo]ur age[?]" to which the detective answered, "13." Farnsworth identified himself as fifty-eight years old, and asked, "[H]ave you been with an older man[?]"

¶ 4 The detective and Farnsworth exchanged phone numbers and continued to send text messages over several days. Farnsworth repeatedly sent sexual messages and asked if they could meet. He also noted that he was working at the Tucson Gem & Mineral Show and sent a photograph of himself. Farnsworth and the detective agreed to meet at a park on February 11, and the detective asked if Farnsworth could pick up a Mountain Dew Code Red on his way. At the park, Farnsworth was stopped and arrested by police officers. In his car, they found his smart phone, a Mountain Dew Code Red, and a Tucson Gem & Mineral Show badge. The phone contained text messages and pictures that matched those exchanged with the detective.

¶ 5 The detective obtained a search warrant for Farnsworth's house. When officers arrived, another person in the home told police that he and his wife—Farnsworth's relative—had been staying there "at least a couple weeks." In Farnsworth's room, officers found a backpack containing a laptop computer and thumb drives, as well as more thumb drives in a desk drawer. They also found a tablet computer with the Whisper application installed. A second laptop was found in the house.

¶ 6 One thumb drive contained several images of child sexual abuse. It also contained several deleted files that had not yet been overwritten, including Farnsworth's driver's license and several employment application forms. The laptop in the backpack had one user account for Farnsworth, and contained his resume. The internet search history included keywords associated with child pornography. A folder on the laptop contained several additional images of child pornography. The laptop contained data establishing that it had previously been connected to the thumb drive with the sexual abuse images. No documents or user accounts on the laptop were associated with anyone other than Farnsworth.

¶ 7 The second laptop had a user account and documents associated with a "Glenn Durbin." It did not contain any saved images of sexual abuse, but it did contain data indicat-

ing the images from the thumb drive had been on the computer at some point.

¶ 8 A grand jury indicted Farnsworth on the luring offense for the communications of February 5–11, the attempted sexual conduct with a minor for the events of February 11, and the sexual exploitation counts for the pornography found later that day. He was convicted and sentenced as described above.

## Discussion

### Closing Arguments About Witness Subpoenas

¶ 9 Farnsworth argued in closing that no one had ever investigated Glenn Durbin, and someone else could have been using the computers and thumb drives. The state rebutted that argument, stating:

> [T]he law is very, very clear. The State has the burden to prove their case to you beyond a reasonable doubt. That burden never ever shifts. However, just like the State, the defense also has the Court's subpoena power, and if there is any witness that the defense thinks has relevant evidence to bring to this jury, the defense, just like the State, has the ability to subpoena those people … and bring them here before you.

Farnsworth did not object below, but now contends the state's argument improperly shifted the burden of proof, resulting in structural error; alternatively, he argues it was fundamental error.

¶ 10 Structural error affects "[t]he entire conduct of the trial from beginning to end," *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), and has only been found to exist in limited instances, none of which apply here, *State v. Ring*, 204 Ariz. 534, ¶ 46, 65 P.3d 915, 933–34 (2003). Moreover, the cases on which Farnsworth relies are inapposite. *See Sullivan v. Louisiana*, 508 U.S. 275, 281–82,

113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (incorrect reasonable doubt jury instruction structural error); *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246 (involuntary confessions analyzed under harmless error standard); *State v. Le Noble*, 216 Ariz. 180, ¶ 19, 164 P.3d 686, 690–91 (App. 2007) (deprivation of right to jury trial structural error). There was no structural error.

¶ 11 Fundamental error requires, inter alia, Farnsworth to show that the state's closing argument constituted error prejudicial to him. *State v. Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d 601, 607 (2005). The state may comment on the defendant's failure to present exculpatory evidence, so long as it is not a comment on the defendant's failure to testify. *State v. Lehr*, 201 Ariz. 509, ¶¶ 55–57, 38 P.3d 1172, 1185 (2002); *State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987); *see also State v. Sarullo*, 219 Ariz. 431, ¶ 24, 199 P.3d 686, 692–93 (App. 2008) (prosecutor's comments on failure to present evidence do not shift burden of proof to defendant absent comment on defendant's silence). He argues, however, that such references are limited to circumstances in which it is clear the defendant had access to the evidence, citing *State v. Corona*, 188 Ariz. 85, 89–90, 932 P.2d 1356, 1360–61 (App. 1997).

¶ 12 *Corona* does not support this contention. In that case, the state erred by commenting on the defendant's failure to call an expert witness when there was no evidence the defendant had ever consulted an expert and no expert had been mentioned to the jury, because the "general rule [is] that closing arguments must be based on facts that the jury is entitled to find from the evidence and not on extraneous matters not received in evidence." *Id.* at 89, 932 P.2d at 1360. In contrast, the existence of Glenn Durbin and the two other people in Farnsworth's home had been introduced to the jury.[1] *See State v.*

---

1. Farnsworth also argues the witnesses would "most likely assert their Fifth Amendment right rather than confess to the jury" if guilty, citing *State v. McDaniel* for the proposition that it is impermissible to call such a witness. 136 Ariz. 188, 665 P.2d 70 (1983), *abrogated on other grounds by State v. Walton*, 159 Ariz. 571, 769 P.2d 1017 (1989), *overruled on other grounds by*

*Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In *McDaniel*, however, it was clear the witnesses would refuse to answer all questions because they had appeared before the trial judge at an in camera hearing. *Id.* at 194, 665 P.2d at 76. There was no such evidence here.

*Edmisten,* 220 Ariz. 517, ¶ 27 & n.4, 207 P.3d 770, 778–79 & n.4 (App. 2009) (no fundamental error when state suggested defendant's failure to produce witness gave rise to inference witness's testimony unfavorable). Moreover, the state emphasized that it had the burden of proof, and, as noted above, the instructions were correct. We presume the jurors followed the court's instructions. *See State v. Newell,* 212 Ariz. 389, ¶ 68, 132 P.3d 833, 847 (2006). The state's comments in rebuttal did not constitute fundamental, prejudicial error.

**Dangerous Crimes Against Children Enhancement**

¶ 13 Farnsworth argues that attempted sexual conduct with a minor is not a dangerous crime against children if the defendant's conduct is limited to interactions with a police officer posing as a minor. Our interpretation of the DCAC sentencing statute is de novo. *See State v. Sepahi,* 206 Ariz. 321, ¶ 2, 78 P.3d 732, 732 (2003).

¶ 14 In *State v. Carlisle,* 198 Ariz. 203, 8 P.3d 391 (App. 2000), we considered the identical issue under the prior, but essentially identical, version of the DCAC statute. In *Carlisle,* the defendant was charged with attempted sexual conduct with a minor under age fifteen for meeting with a person he believed was a fourteen-year-old boy but who was actually an eighteen-year-old actor working with a television reporter. *Id.* ¶¶ 2–8. The trial court determined the DCAC sentencing statute did not apply, and the state cross-appealed. *Id.* ¶ 16. We reversed, noting that the DCAC statute explicitly considered preparatory offenses such as attempt, and provided a "second degree" classification for them. *Id.* ¶ 17. That there never was a child, we reasoned, did not matter because factual impossibility is not a defense to attempt. *Id.*

¶ 15 Farnsworth first argues *Carlisle* was abrogated by the reasoning of *State v. Sepahi.* In *Sepahi,* the defendant was convicted of aggravated assault for shooting a fourteen-year-old girl. 206 Ariz. 321, ¶¶ 3–4, 78 P.3d at 732–33. He was sentenced pursuant to the DCAC statute and our supreme court affirmed. *Id.* ¶¶ 5–6, 22. In doing so, it reaf-firmed its holding in *State v. Williams,* 175 Ariz. 98, 103, 854 P.2d 131, 136 (1993), that conduct must be "focused on, directed against, aimed at, or target[ed] a victim under the age of fifteen" before the DCAC statute applies. *Sepahi,* 206 Ariz. 321, ¶ 19, 78 P.3d at 735, *quoting Williams,* 175 Ariz. at 103, 854 P.2d at 136. The court then held that the DCAC statute applied because the defendant had targeted a victim under the age of fifteen. *Id.*

¶ 16 Farnsworth's reliance on *Sepahi* overlooks that *Carlisle* specifically addressed and distinguished *Williams. Carlisle,* 198 Ariz. 203, ¶ 16, 8 P.3d at 395. Furthermore, the court held that the defendant had "targeted a victim he believed to be under the age of fifteen and then attempted a crime. This is precisely the type of conduct that the legislature addressed in [the DCAC statute]." *Id.* ¶ 18. *Carlisle* is still good law.

¶ 17 Farnsworth also relies on two cases regarding luring a minor for sexual exploitation issued one day apart by different divisions of this court: *State v. Villegas,* 227 Ariz. 344, 258 P.3d 162 (App. 2011), and *State v. Regenold,* 227 Ariz. 224, 255 P.3d 1028 (App. 2011). We agree that the facts in *Villegas* and *Regenold* are similar to those in this case: detectives posing as fourteen-year-old girls electronically communicated with defendants, who offered or solicited sexual acts. *Villegas,* 227 Ariz. 344, ¶ 1, 258 P.3d at 163; *Regenold,* 227 Ariz. 224, ¶ 2, 255 P.3d at 1029. Those defendants, unlike Farnsworth, were convicted only of luring rather than attempted sexual conduct with a minor. *Villegas,* 227 Ariz. 344, ¶ 1, 258 P.3d at 163; *Regenold,* 227 Ariz. 224, ¶ 1, 255 P.3d at 1029. Those decisions utilized a plain-language reading of the luring statute. Specifically, both courts focused on the sentencing provision in A.R.S. § 13–3554, which states, "[I]f the minor is under fifteen years of age [luring] is punishable pursuant to § 13–705," to conclude that a minor must be an actual child rather than an adult posing as one. *Villegas,* 227 Ariz. 344, ¶ 3, 258 P.3d at 163; *Regenold,* 227 Ariz. 224, ¶ 4, 255 P.3d at 1029–30. They additionally found support for their reasoning in differing

authorities.[2]

¶ 18 Only *Villegas*, however, addressed the arguably contrary holding in *Carlisle*. *Villegas*, 227 Ariz. 344, ¶ 4, 258 P.3d at 163–64. It distinguished *Carlisle* because it involved the preparatory offense of attempt, in which factual impossibility is not a defense. *Villegas*, 227 Ariz. 344, ¶ 4, 258 P.3d at 163–64; *see also* A.R.S. § 13–1001(B); *State v. McElroy*, 128 Ariz. 315, 317, 625 P.2d 904, 906 (1981) (factual impossibility not a defense to crime of attempt). In contrast, violation of the luring statute involves a completed offense and that statute provides that it is not a defense that the minor was actually an adult posing as a minor. *Villegas*, 227 Ariz. 344, ¶¶ 3–4, 258 P.3d at 163–64. In other words, *Villegas* explicitly and *Regenold* indirectly did not challenge the precedential effect of *Carlisle*.[3]

¶ 19 Our supreme court recently questioned whether *Regenold* and *Villegas* "were correctly decided." *State ex rel. Polk v. Campbell*, 239 Ariz. 405, ¶¶ 14–16, 372 P.3d 929, 932–33 (2016). Importantly, the court rejected the reasoning advanced by Farnsworth. *Id.* ¶ 16. It also adopted an application of § 13–705 directly contrary to the plain language analysis advanced in the dissent. *See id.*

¶ 20 In *Polk*, the defendant argued that he should not be subject to enhanced, consecutive sentences for child prostitution because the minor was a police officer posing as a sixteen-year-old. *Id.* ¶¶ 2, 12. He contended, inter alia, any interpretation of A.R.S. § 13–3212(G) that was not limited to actual minors would be absurd because sentence enhance-ment would occur if the officer posed as a fifteen- to seventeen-year-old youth, but was legally barred if the officer posed as a minor younger than fifteen. *Polk*, 239 Ariz. 405, ¶ 16, 372 P.3d at 933. For this latter conclusion, the defendant relied on the holdings and reasoning in *Villegas* and *Regenold*. *Polk*, 239 Ariz. 405, ¶ 16, 372 P.3d at 933. The court first distinguished those cases based on the differences in wording between the luring and child prostitution statutes. *Id.* ¶ 15.

¶ 21 But the court also addressed subsection (F) of the child prostitution statute that explicitly incorporates § 13–705 if the minor is under fifteen. The court observed that a conviction based on an officer posing as fourteen or younger "is punishable under the DCACA," which would be harsher than circumstances where the officer posed as an older minor. *Id.* ¶ 16. This conclusion would not be possible if the court adopted an interpretation of § 13–705(P)(1) that limited punishment under DCAC to convictions only involving a minor, rather than a police officer posing as a minor.[4]

¶ 22 Our dissenting colleague contends that *Polk* provides no precedential effect or even guidance because it involved the child prostitution statute. Although the arguments by the dissent and Farnsworth overlap, they are sufficiently different to require a separate explanation of why the dissent's attempt to distinguish *Polk* is unpersuasive. First, to address the absurdity argument, the court was required to determine whether a § 13–3212(B)(1) offender would be punished more

---

2. The *Villegas* court relied on the plain language of § 13–705(P), which defines DCAC crimes as those "committed against a minor who is under fifteen years of age." *Villegas*, 227 Ariz. 344, ¶ 3, 258 P.3d at 163. It also cited *Sepahi*, 206 Ariz. 321, ¶ 19, 78 P.3d at 735, for the proposition that the defendant must have directed his or her conduct "at a person under the age of fifteen." *Villegas*, 227 Ariz. 344, ¶ 3, 258 P.3d at 163. The *Regenold* court cited *State v. Hazlett*, 205 Ariz. 523, ¶ 12, 73 P.3d 1258, 1263 (App. 2003), for its holding that the term "minor" in the sexual exploitation statute referred to an "actual child." *Regenold*, 227 Ariz. 224, ¶ 5, 255 P.3d at 1030.

3. The *Villegas* court also implied that *Carlisle* may no longer be good law in light of *Sepahi*, but then proceeded under the assumption that it was. *Villegas*, 227 Ariz. 344, ¶ 4, 258 P.3d at 163–64.

4. The dissent includes a detailed and exhaustive analysis of legislative intent to address the state's argument and to buttress its interpretation of § 13–705(P)(1) that excludes DCAC enhancement involving an officer posing as a minor. We do not address legislative intent because we are obligated to follow the statutory interpretation of our supreme court unless and until the legislature changes the applicable statutes. *See State v. Fell*, 209 Ariz. 77, ¶ 20, 97 P.3d 902, 908 (App. 2004) (supreme court statutory interpretation becomes part of statute); *see also State v. Garza Rodriguez*, 164 Ariz. 107, 110–11, 791 P.2d 633, 636–37 (1990) (legislative amendment is presumed to change existing law, including cases interpreting prior statute). Similarly, we decline to address the dissent's conclusion that *Carlisle* erred in its reasoning and should not be followed.

severely under the DCAC, for the reason that subsection (F) specifies the offense "is punishable pursuant to § 13–705." In that context, the court's statement that the DCAC requires "harsher sentences than those in subsection (G)" is more than dicta—it is a substantive conclusion. *Polk*, 239 Ariz. 405, ¶ 16, 372 P.3d at 933; *see also Phelps Dodge Corp. v. Ariz. Dep't of Water Res.*, 211 Ariz. 146, n.9, 118 P.3d 1110, 1116 n.9 (App. 2005) (explaining difference between judicial and obiter dicta). Moreover, the court only considered facts involving an officer posing as a minor. *Polk*, 239 Ariz. 405, ¶ 16, 372 P.3d at 933. Thus, to the extent the dissent implicitly contends that DCAC can only apply with an actual minor, *Polk* rejects that interpretation.

¶ 23 Second, the child prostitution statute incorporates and is referenced in the DCAC in a manner identical to the sexual conduct with a minor statute in this case. This is not a circumstance where the legislature chose to apply the DCAC more broadly under the child prostitution statute. Specifically, § 13–1405(B) provides that an offense with a victim under fifteen is "punishable pursuant to § 13–705"; and, § 13–3212(F) uses the identical language for child prostitution with victims under fifteen as "punishable pursuant to § 13–705." Additionally, the DCAC catalogues the applicable offenses committed against under-fifteen minors, and lists both sexual conduct with a minor as well as child prostitution. *See* § 13–705(P)(1)(e), (*l*). Finally, there is no language in § 13–705(P), or its list of offenses, that indicates a section (e) offense requires an actual child, but a section (*l*) offense is satisfied if an officer poses as a minor under fifteen.

¶ 24 We conclude, therefore, that because *Villegas* distinguished *Carlisle* rather than declared it void after *Sepahi*, *Regenold* did not address *Carlisle*, and our supreme court in *Polk* both questioned and limited the lur-

ing-DCAC cases, there is no reason to conclude *Carlisle* does not apply here.[5] Thus, the trial court did not err in sentencing Farnsworth under the enhanced sentencing statute. *Carlisle*, 198 Ariz. 203, ¶¶ 17–18, 8 P.3d at 395–96.

**Disposition**

¶ 25 For the foregoing reasons, we affirm Farnsworth's convictions and sentences.

ECKERSTROM, Chief Judge, dissenting in part and concurring in part:

¶ 26 In § 13–705, our legislature set forth enhanced sentences for those convicted of offenses which constitute "dangerous crimes against children." In this case, we assess whether the legislature intended to generally apply those sentencing enhancements when no actual minor was a victim of the defendant's criminal act. We must begin with the statutory language the legislature has provided, and if it is "unambiguous, we apply it as written without further analysis." *State ex rel. Polk v. Campbell*, 239 Ariz. 405, ¶ 5, 372 P.3d 929, 930 (2016).

¶ 27 Section 13–705(P)(1) defines a dangerous crime against children (DCAC) as one of several listed offenses "committed against a minor who is under fifteen years of age." A minor is defined as "a person under the age of eighteen years." A.R.S. § 1–215(21). A person, in this context, means "a natural person," § 1–215(28), or "a human being," A.R.S. § 13–105(30). A plain reading of this language compels the conclusion that it applies only when a defendant commits an enumerated offense against a person under the age of fifteen.[6]

¶ 28 The state nonetheless maintains that the legislature intended those who *target* a person they *believe to be* under fifteen to be

---

5. Indeed, in dicta, our supreme court cited *Carlisle* to suggest that a defendant could be charged with attempted luring even when the completed offense would be a factual impossibility. *Mejak v. Granville*, 212 Ariz. 555, n.1, 136 P.3d 874, 875 n.1 (2006) (under previous version of statute limiting completed offense of luring to minors and peace officers posing as such, defendant could not be charged with luring reporter posing as minor).

6. Our supreme court has construed the statute to add a third requirement: that the offender targeted or focused on the child victim. *See State v. Sepahi*, 206 Ariz. 321, ¶¶ 8, 12, 78 P.3d 732, 733, 734 (2003). This requirement can be met regardless of whether the defendant knew the child was under fifteen so long as the defendant targeted a person who was under fifteen. *Id.*

punished under that provision even when no actual child was a victim of the offender's conduct. But no language in § 13–705 supports such a construction. No language in the statute expands the phrase "minor who is under fifteen" to include a class of persons other than those under fifteen.

¶ 29 Indeed, when the legislature has wished to apply the DCAC law to include those not meeting that definition, it has expressly so stated. *See* § 13–705(N) ("In this section, for purposes of punishment an unborn child shall be treated like a minor who is under twelve years of age."). In *Polk*, for instance, our supreme court recognized that the DCAC law applies to certain child prostitution offenses involving putative children because the statute defining that crime so provides in A.R.S. § 13–3212(F). *See Polk*, 239 Ariz. 405, ¶ 16, 372 P.3d at 933.[7] Nor does any language in the statute qualify the words "committed against" to somehow reference a defendant's subjective but erroneous belief about the age of the victim. § 13–705(P)(1).

¶ 30 As our supreme court has cautioned, "[w]e must distinguish between the culpable mental state required for the commission of the offense … and the language 'committed against a minor' " that instead concerns sentencing enhancement. *State v. Williams*, 175 Ariz. 98, 102, 854 P.2d 131, 135 (1993). The words "committed against" describe an *actus reus* and would therefore be an illogical word choice for a legislature seeking to reach a broader class of defendants based exclusively on their *mens rea*. *See State v. Sarullo*, 219 Ariz. 431, n.2, 199 P.3d 686, 691 n.2 (App. 2008) (rejecting argument "that the only victim of a burglary is the person against whom the theft or felony *was intended* to be committed") (emphasis added); *State ex rel. Romley v. Superior Court*, 184 Ariz. 409, 410–11, 909 P.2d 476, 477–78 (App. 1995) (holding motorist struck by drunk driver had "the crime of DUI … committed against him," regardless of defendant's intent).

¶ 31 The legislature's other uses of the same words confirm that they refer to an actual minor. In the same bill that first enacted the DCAC statute, *see* 1985 Ariz. Sess. Laws, ch. 364, §§ 6, 38, using essentially identical language, and identifying the same subset of persons, the legislature referred to actual minors when setting forth standards for child testimony. *See* A.R.S. § 13–4251(A) ("This article applies to the testimony or statements of a minor … involving acts committed against the minor…."), (B) ("In this article, 'minor' means a person under fifteen years of age…."). We must presume that the legislature envisioned the phrase "committed against a minor" in the DCAC law and the nearly identical phrase "committed against the minor" in § 13–4251 to carry the same meaning in both contexts. *See Obregon v. Indus. Comm'n*, 217 Ariz. 612, ¶ 21, 177 P.3d 873, 877 (App. 2008) ("It is a 'normal rule of statutory construction that identical words used in different parts of the same Act are intended to have the same meaning.' "), *quoting Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Unless one can conjure any legislative logic in protecting police officers from the rigors of live, in-court testimony, *see* A.R.S. §§ 13–4252, 13–4253, these identical definitions were manifestly designed to refer to a subset of actual child victims, namely "person[s] under fifteen years of age." § 13–4251(B).

¶ 32 When the legislature first passed the DCAC statute and related amendments, a "victim" of a crime had a special status under the law. Specifically, he or she was entitled by statute to receive restitution. 1984 Ariz. Sess. Laws, 2d Reg. Sess., ch. 124, § 1 and ch. 123, § 1 (former A.R.S. § 13–603(C)). Although the word "victim" was not then defined in our code, we construed the term as applying only to those people or companies that were directly harmed by the offense, *see State v. French*, 166 Ariz. 247, 249, 801 P.2d 482, 484 (App. 1990), not to government entities performing their normal investigative functions, *see State v. Maupin*, 166 Ariz. 250, 252–53, 801 P.2d 485, 487–88 (App. 1990). To characterize an investigating officer as a "victim" of a crime, we reasoned, would "[s]train the commonly accepted meaning of the word." *Id.* at 253, 801 P.2d at 488.

7. For reasons I explain more fully below, the majority misreads *Polk* and overlooks this point.

¶ 33 In fact, our legislature has persistently used the phrase "committed against" in our criminal code to define the status of an actual victim. In statutes implementing the Victims' Bill of Rights, our legislature defined a victim as "a person against whom the criminal offense has been committed." A.R.S. § 13–4401(19); *accord* Ariz. Const. art. II, § 2.1(C) (employing same language to define victim). Thus, when choosing the language to determine the scope of the DCAC statute, our legislature chose the very same phrasing it had used, and would use, in other contexts to define an actual victim.

¶ 34 In short, the legislature has historically used the phrase "committed against" to denote actual victims of criminal conduct, and that usage has not linguistically or logically invited the application of that phrase to others. On those occasions when the legislature has employed this language in title 13 but nevertheless intended a defendant's beliefs or knowledge to be a relevant factor, it has so stated. *See, e.g.*, A.R.S. § 13–3601(M) ("If the defendant committed *a felony offense . . . against a pregnant victim and knew that the victim was pregnant or* if the defendant committed *a felony offense causing physical injury to a pregnant victim and knew that the victim was pregnant*, the maximum sentence . . . shall be increased. . . .") (emphasis added).

¶ 35 For these reasons, one must supply language not found in the current text of § 13–705(P)(1) to construe the statute as reaching a broader class of defendants than those who commit crimes against actual children under fifteen. In essence, the state asks this court to constructively amend the statutory language to define a dangerous crime against children as one "committed against a minor who is under fifteen years of age *or a person the defendant believes to be under the age of fifteen*." But, in the context of interpreting the scope of the DCAC law, our

supreme court has specifically cautioned against applying interpretations that amend statutory language, thereby "expand[ing] a statute to matters not falling within its express provisions." *State v. Sepahi*, 206 Ariz. 321, ¶ 15, 78 P.3d 732, 735 (2003), *quoting State ex rel. Morrison v. Anway*, 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960). As it tersely concluded, "[a] departure from this rule is to alter the statute and legislate, and not to interpret." *Id., quoting Anway*, 87 Ariz. at 209, 349 P.2d at 776.

¶ 36 The state correctly observes that a defendant's commission of some preparatory offenses may trigger DCAC enhancement. *See* § 13–705(O) (setting forth respective levels of DCAC enhancement for preparatory and completed offenses). From this, the state and my colleagues deduce that *all* those who commit preparatory offenses of crimes enumerated in § 13–705(P)(1) must qualify for enhancement. Specifically, they reason that Farnsworth's conviction for attempted sexual conduct with a minor necessarily rendered him eligible for sentencing under the DCAC regime because that offense would be included as a preparatory offense under § 13–705(O). But many of the qualifying offenses listed in subsection (P) and their preparatory versions incorporated by subsection (O)— second-degree murder, aggravated assault, kidnapping, sexual abuse, sex trafficking, and attempted first-degree murder—are commonly committed against adults rather than children. And, no reasonable reading of § 13–705 would suggest that those offenses would qualify for DCAC enhancement in the absence of an additional finding that those crimes were "committed against a minor who is under fifteen years of age." § 13–705(P)(1).[8] Thus, a defendant's commission of an offense which is enumerated in § 13–705(P)(1), or incorporated by subsection (O) as a preparatory offense, is a necessary but not sufficient condition for DCAC enhancement.[9] *See* § 13–705(P)(1) (expressly describ-

---

8. Although the sexual conduct with a minor statute refers to the DCAC enhancement statute, it does so only for completed offenses, which, by definition, can only be committed against actual minors. A.R.S. § 13–1405(B). The majority overlooks this point when it emphasizes that reference. *See supra* ¶23.

9. Notably, preparatory offenses such as attempt may involve an actual child victim or may be characterized as attempts because, as here, the target was a police officer posing as a child. *See* § 13–705(J) (substituting classification and punishment scheme for certain preparatory offenses when "a person . . . is convicted of a dangerous crime against children"). Thus, some factual

ing qualifying offenses as one of two necessary conditions for enhancement).

¶ 37 Nor does the inclusion of an offense under § 13–705(O) or (P) demonstrate any legislative intent that all perpetrators of those offenses become eligible for enhanced sentencing regardless of the identity of the victim. Section 13–705(O) reads, in pertinent part: "A dangerous crime against children is in the first degree if it is a completed offense and is in the second degree if it is a preparatory offense. . . ." By its terms, § 13–705(O) categorizes sub-types of dangerous crimes against children for determining sentence; that language does not purport to expand or modify the threshold definition of what constitutes a dangerous crime against a child. As discussed, the legislature defines a "dangerous crime against children" in the subsequent subsection to be exclusively confined to victims under the age of fifteen. And that definition from subsection (P) is expressly applied in the introductory clause to subsection (O). Thus, subsection (O) refers only to those preparatory offenses which are "dangerous crimes against children," as defined in subsection (P). In accepting the state's argument—that § 13–705(O) expands the scope of the DCAC enhancement to include crimes not committed against a minor under the age of fifteen—the majority overlooks that, under the plain text of the statutory scheme, § 13–705(P)(1) informs the meaning of § 13–705(O), not vice versa. Put another way, the qualifying definition of a "dangerous crime against children" is found in § 13–705(P)(1), not in § 13–705(O).

¶ 38 The plain language provided to us by the legislature makes clear that DCAC enhancement applies only in those cases involving an actual victim under the age of fifteen, unless the legislature has provided otherwise elsewhere in the code. For this reason, our court need conduct no further analysis to resolve whether that enhancement applies to Farnsworth. But any broader analysis of the history, purpose, and context of the DCAC statute only confirms this reading of legisla-

tive intent. *See Polk*, 239 Ariz. 405, ¶ 5, 372 P.3d at 930.

¶ 39 When construing a statute, we strive to give effect to the intent of the enacting legislature. *State v. Jones*, 235 Ariz. 501, ¶ 6, 334 P.3d 191, 192 (2014). The legislative history of the DCAC statute reveals that it was designed to more severely punish those who had actually harmed children.

¶ 40 The relevant provisions of the DCAC statute have been in place since the law was first enacted in 1985. *See* 1985 Ariz. Sess. Laws, ch. 364, § 6. The DCAC law began as S.B. 1021, although it was passed as an amendment to a house bill related to criminal procedures. *See Williams*, 175 Ariz. at 102, 854 P.2d at 135. The title of the Senate bill, as it was introduced, described the DCAC law as "prescribing sentences for sexual offenses if children are victims." S.B. 1021, 37th Leg., 1st Reg. Sess., at 1 (Ariz. Jan. 1985). Senator Kay, who was then chairman of the Senate Committee on Judiciary and sponsor of the bill, explained: "The concept behind these increased sentences is that the young people are scarred for life." S. Minutes of Comm. on Judiciary, 37th Leg., 1st Reg. Sess., at 2 (Ariz. Jan. 22, 1985). Thus, in addition to serving an important deterrent and protective role, the DCAC law had, at its core, a punitive purpose aimed at providing just desserts for offenders who had inflicted unique harms on child victims.

¶ 41 Since its inception, therefore, the DCAC law has applied based on the status of the victim, not necessarily on the perpetrator's beliefs. Of the enumerated crimes listed in the original DCAC statute, half of the offenses were inherently committed against children (child molestation, sexual conduct with a minor, commercial sexual exploitation of a minor, sexual exploitation of a minor, and intentional or knowing child abuse under circumstances likely to cause death or serious physical injury), and half were not (second-degree murder, aggravated assault causing serious physical injury or using a deadly weapon or dangerous instrument, sexual assault, kidnapping, and sexual abuse). 1985

---

presentations of attempted sexual conduct with a minor under fifteen will qualify for DCAC enhancement while others will not—just as some

second-degree murder offenses will qualify for DCAC enhancement (because the victim was under fifteen) while others will not.

Ariz. Sess. Laws, ch. 364, §§ 6, 31. For all the crimes in the latter group, and even for the offense of child abuse, the legislature specified that the DCAC statute only applied "if the *victim* is under fifteen years of age." 1985 Ariz. Sess. Laws, ch. 364, §§ 12, 14–15, 17, 19, 31 (emphasis added). The legislature similarly made the remaining offenses punishable by the DCAC law "if the minor is under fifteen years of age," 1985 Ariz. Sess. Laws, ch. 364, §§ 26–27, or if the offense was committed "with a minor under fifteen," 1985 Ariz. Sess. Laws, ch. 364, § 18. The only enumerated crime without such a conditional clause regarding the DCAC statute was child molestation; yet that offense had as an element "knowingly molest[ing] a child under the age of fifteen years." 1985 Ariz. Sess. Laws, ch. 364, § 21.

¶ 42 The legislature has not been reluctant to draw a distinction between actual and putative children when it has thought that distinction relevant. Examples include the luring statute, A.R.S. § 13–3554(B); the child prostitution statute, § 13–3212(C); and the unlawful age misrepresentation statute, A.R.S. § 13–3561(B). The legislature has similarly passed laws distinguishing information that a criminal defendant knew, "had reason to know," § 13–3561(A), or "should have known," § 13–3212(B)(2); *see, e.g.,* A.R.S. §§ 13–1401(A)(7)(b) (defining lack of consent based on victim's incapacity), 13–2319(F)(3) (defining smuggling of human beings); *cf.* A.R.S. § 13–3111(F) (specifying parents' liability when minors unlawfully carry or possess firearms). If the legislature wished to make the DCAC statute apply based on a defendant's beliefs, or if the legislature intended the DCAC statute to apply to situations otherwise excluded by that law's definitional provision, the legislature knew how to do so.[10] *See State v. Peek*, 219 Ariz. 182, ¶ 19, 195 P.3d 641, 644 (2008).

¶ 43 The legislature's intent, expressed by its enactment of the offense of "luring a minor for sexual exploitation," is especially instructive. § 13–3554. Notably, when a defendant targets a minor and solicits him or her to engage in sexual acts, a prosecutor may charge that behavior as both luring and attempted sexual conduct with a minor, as happened in this case. *See* A.R.S. §§ 13–1001(A)(2), 13–1405(A), 13–3554. Indeed, the same evidence was marshalled to convict Farnsworth of both offenses. In describing the offense of luring, the legislature implicitly acknowledged that the crime might involve someone posing as a child under fifteen. *See* § 13–3554(A), (B) ("having reason to know that the other person is a minor" sufficient mental state for offense; no defense that actual person lured was not a minor). Yet it also expressly excluded DCAC enhancement when the target was not an actual minor under the age of fifteen. *See* § 13–3554(C); *State v. Regenold*, 227 Ariz. 224, ¶ 4, 255 P.3d 1028, 1030 (App. 2011) (holding plain language compelled that reading); *State v. Villegas*, 227 Ariz. 344, ¶ 3, 258 P.3d 162, 163 (App. 2011) (same).

¶ 44 In the context of an offense enacted in the internet era, the legislature has thus considered whether offenders, such as Farnsworth, who have solicited sexual conduct with a putative minor, should receive the DCAC enhancement. *See* 2000 Ariz. Sess. Laws, ch. 189, § 30 (creating luring offense codified at § 13–3554). The legislature has concluded such offenders should not. The majority nonetheless maintains that the legislature intended a different outcome as to offenders committing the same culpable conduct, but who have been charged with a different offense of the same classification level, attempted sexual conduct with a minor. *See* §§ 13–1001(C)(2), 13–1405(B), 13–3554(C). In my view, we should be reluctant to infer that the legislature tacitly intended such an illogical distinction.

---

**10.** The majority erroneously suggests that the existence of special provisions in the child prostitution sentencing scheme, expressly applying § 13–705 to those who commit child prostitution with someone they believe to be a minor, demonstrates that the legislature intended § 13–705 to apply to *all* crimes wherein the perpetrator believed the victim to be a minor. *See supra* ¶¶ 22–

23. To the contrary, those provisions would have been superfluous if the legislature believed that § 13–705(P) already applied to all variants of that offense. *See* § 13–705(P)(1)(*l*) (itemizing child prostitution as offense generally eligible for DCAC treatment when "committed against a minor who is under fifteen years of age").

496

¶ 45 My colleagues correctly observe that our court addressed the precise question presented here in *State v. Carlisle*, 198 Ariz. 203, 8 P.3d 391 (App. 2000). In that case, our court held that DCAC enhancement could apply so long as the defender's conduct is "focused on, directed against, aimed at, or target[s] a victim under the age of fifteen." *Id.* ¶ 16, *quoting Williams*, 175 Ariz. at 103, 854 P.2d at 136 (alteration in *Carlisle*). Because Carlisle had targeted a person "he believed to be" under fifteen, the court concluded the DCAC enhancement applied. *Id.* ¶ 18. In essence, the court borrowed the reasoning of our supreme court in *Williams* to conclude that the offender's *mens rea* of targeting a child could satisfy or replace the express statutory requirement that the crime be committed against a child.

¶ 46 In *Williams*, however, the supreme court had addressed the applicability of the DCAC statute when the existence of an actual child victim was undisputed and the express statutory requirement that the crime be committed against a child had been fulfilled. The defendant, while driving drunk, had caused serious injury to a child riding in another vehicle. *Williams*, 175 Ariz. at 99, 854 P.2d at 132. The court concluded that the legislature did not intend to apply the enhancement to persons like Williams who "fortuitously injure children by their unfocused conduct." *Id.* at 103, 854 P.2d at 136. In so holding, the supreme court set forth an *additional* condition for DCAC enhancement *beyond* those unambiguously set forth in the current § 13–705(P)(1): that the defendant not only commit a qualifying crime against a minor under fifteen but also that the conduct be focused on, or target, the child. *Williams*, 175 Ariz. at 103, 854 P.2d at 136.

¶ 47 In *Carlisle*, the court's reasoning thus overlooked that the *Williams* court had adopted the targeting requirement to narrow the range of persons eligible for DCAC enhancement, not to expand it. And no reasoning in *Williams* suggests that the state would be relieved of proving the other express statutory requirements for DCAC enhancement: to wit, that a qualifying offense was "committed against" a person under fifteen. § 13–705(P)(1).

¶ 48 Since *Carlisle* was issued, our supreme court has clarified that the *mens rea* of targeting a child stands as an additional condition for DCAC enhancement and does not replace the express requirement of the qualifying *actus reus*. In *Sepahi*, that court described its previous opinion as follows:

We held in *Williams* that even when a defendant is convicted of one of the statutorily enumerated crimes *and the victim is younger than fifteen*, "something more" is required to activate the special sentencing provisions of the statute. Because the dispute in this case [whether the state must also show the defendant posed a peculiar threat to children in addition to targeting] is about what constitutes that "something more," the appropriate starting point in the analysis is our opinion in *Williams*.

*Sepahi*, 206 Ariz. 321, ¶ 8, 78 P.3d at 733 (citation omitted) (emphasis added). In short, the core reasoning in *Carlisle* on the question of DCAC enhancement—that the qualifying offense need not be committed against a minor under fifteen so long as the defendant has the *mens rea* to target a child—has been plainly controverted by more recent supreme court jurisprudence. Our supreme court has clearly stated that the targeting requirement is "something more," not something which replaces the requirement of a child victim. *Carlisle* has thus been overtaken on this point of law, and we err in continuing to follow it.

¶ 49 As our supreme court emphasized in *Sepahi*, "a statute's language is the most reliable index of its meaning." 206 Ariz. 321, ¶ 16, 78 P.3d at 735. It admonished this court for stretching "statutory language beyond ordinary bounds to read it as also necessitating proof of some sort of special continuing dangerous status on the part of the defendant." *Id.* Here, the state's argument commits a species of the same error by stretching the statute's language to encompass a class of offenders (those who believe they are committing a crime against a child) otherwise unmentioned in the text of the statute. Our supreme court's own concluding observation in *Sepahi* thus applies with equal force to the state's argument here: "While the legislature could have rationally passed such a statute, it

did not do so, and we cannot rewrite the statute to reach such a result." *Id.*

¶ 50 Lastly, the majority misreads our supreme court's opinion in *Polk* when it suggests that case is dispositive. *Polk* addressed a unique sentencing enhancement scheme for child prostitution offenses, § 13–3212, which included materially different provisions than those found in the DCAC law. Its holding was expressly limited to interpreting the child prostitution statute. *See Polk*, 239 Ariz. 405, ¶ 17, 372 P.3d at 933 ("We hold that 'minor' as used in A.R.S. § 13–3212(D) and (G) means...."). And, that opinion expressly distinguished the issue before it from analogous issues arising under the DCAC statute. *See Polk*, 239 Ariz. 405, ¶ 15, 372 P.3d at 932 ("[W]e are not persuaded to reach a similar conclusion here because the luring and child prostitution statutes are materially different.... [*Regenold* and *Villegas*] relied on the meaning of 'minor' in the DCACA, which is not triggered by § 13–3212(G)."); *see also Polk*, 239 Ariz. 405, ¶ 16, 372 P.3d at 933 (distinguishing DCAC cases). To the extent the defendant in *Polk* urged arguments gleaned from jurisprudence interpreting the DCAC law, the court rejected the applicability of that precedent, not the merits of the reasoning therein. *See* 239 Ariz. 405, ¶¶ 15–17, 372 P.3d at 932–33.[11]

¶ 51 Thus, far from suggesting that it intended to resolve the question presented to us here—the application of § 13–705(P)(1) to offenses committed against putative children—the *Polk* court expressly clarified that previous interpretations of the DCAC law were irrelevant to the issue before it. "[I]t is always inappropriate to read an appellate opinion as authority for matters neither specifically presented and discussed, nor even accorded footnote mention." *Calnimptewa v. Flagstaff Police Dep't*, 200 Ariz. 567, ¶ 24, 30 P.3d 634, 639 (App. 2001). Because the statutory interpretation question presented here was not addressed even obliquely in *Polk*, I cannot agree that *Polk* constitutes either

controlling or persuasive authority on the question before us. Rather, this court should follow those cases wherein our supreme court has construed the text of what is now § 13–705(P)(1): *State v. Williams* and *State v. Sepahi.*

¶ 52 In sum, I cannot construe the words "committed against a minor who is under fifteen years of age" to include persons who are not under fifteen and who are not even minors. § 13–705(P)(1). Such a construction does "violence to the statutory text," *Harbison v. Bell*, 556 U.S. 180, 207, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009) (Scalia, J., concurring in part and dissenting in part), and "violence to the English language." *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 332 n.1, 120 S.Ct. 866, 145 L.Ed.2d 845 (2000). When our courts interpret statutes so as to contradict their terms, we compromise the lone tool by which our legislature can communicate its intentions: the plain meaning of the words it has chosen. In so doing, we undermine the ability of our legislature to lucidly communicate the extent and limitations of its consensus on questions of law, and we encroach on an exclusive legislative domain. Rather than compounding our error in *Carlisle*, we should simply comply with *Sepahi* and apply the clear text of the DCAC statute as it is written. *See, e.g., State v. Gonzalez*, 216 Ariz. 11, ¶¶ 9–10, 162 P.3d 650, 652–53 (App. 2007) (applying plain language of DCAC law despite likelihood of legislative oversight).

¶ 53 For the foregoing reasons, I respectfully dissent from my colleagues' reasoning and conclusion that the DCAC enhancement may apply when offenders target persons they incorrectly believe are minors under the age of fifteen. I concur with that opinion in all other respects.

---

11. My colleagues suggest that the opinion's use of the phrase "[e]ven assuming *Regenold* and *Villegas* were correctly decided," *Polk*, 239 Ariz. 405, ¶ 15, 372 P.3d at 932, should be accorded weight as an implication that the court doubted the reasoning of those cases. *Supra* ¶19. Correct-

ly understood, those words signify only that the court declined to address their reasoning altogether. However one interprets that clause, our supreme court does not have the practice of disfavoring prior jurisprudence so indirectly and without the support of any reasoning.